Fidelity Coal Company, Appellant, v. Alfred Diamond and Mutual Life Insurance Company of New York, Appellees.

Gen. No. 42,203.

230

Heard in the second division of this court for the first district at the April term, 1942. Opinion filed March 8, 1944.

HAROLD L. EISENSTEIN, of Chicago, for appellant; ABNER GOLDENSON and CARL B. APLON, both of Chicago, of counsel.

JACOB DIAMOND and HARRY C. DIAMOND, both of Chicago, for appellee; MEYER SHAPIRO, of Chicago, of counsel.

MR. JUSTICE SCANLAN delivered the opinion of the court.

On October 11, 1937, plaintiff recovered a judgment in the municipal court of Chicago against defendant Alfred Diamond in the sum of $149.37. Execution was returned, "no property found and no part satisfied." On July 24, 1939, plaintiff filed its amended complaint in chancery seeking to satisfy the judgment, that was still unpaid, by reaching the cash surrender value of a certain life insurance policy issued March 21, 1934, upon the life of defendant Alfred Diamond by defendant Mutual Life Insurance Company of New York. The policy contains a provision to pay death benefits in the amount of $1,000 to insured's father on the death of the insured, conditioned upon the continued payment of premiums. The policy also contains a provision that the insurance company agreed, conditioned upon continued payment of premiums and the continued life of the insured, to pay an endowment when the insured reaches the age of 60 years. While the policy is called an "endowment" policy, the endowment provision has no bearing upon the instant case, as the insured has not reached the age of 60 years. The policy also contains a provision that the insured may terminate the contract by the exercise of one of

two options, (1) to surrender the policy for its cash surrender value, (2) to elect to have paid up insurance by which the reserve may be used to purchase a policy in a reduced amount, no further payment of premiums being required. There have been no defaults in the payment of premiums and the insured has not exercised either of the said options. He held the policy. The answer of the insurance company sets up certain material provisions of the policy and states that "the cash surrender value of said policy on June 21, 1941 will be $248.36, including the cash surrender value of dividend additions, subject to the deduction of a loan of $35.52." The answer further states:

"(7) That since the issuance of said policy of insurance the said policy of insurance has not been tendered or delivered to The Mutual Life Insurance Company of New York, a corporation, for the purpose of obtaining the full cash surrender value thereof or for any other purpose except as hereinabove set forth, and that The Mutual Life Insurance Company of New York does not have possession of said policy of insurance.

"(8) That neither Alfred Diamond, the insured, or Isadore B. Diamond, the beneficiary of said policy of insurance, have offered to surrender the said policy for its said cash surrender value or for any other purpose except as hereinabove set forth."

The answer of defendant Diamond so far as it is material to this appeal states that he has no application for a loan upon the policy pending nor has he at any time delivered the policy for the purpose of demanding its cash surrender value. "The answer further alleges that the cash surrender value of the life insurance policy in question cannot be reached by creditor's bill unless the insured has voluntarily applied to the insurance company for its surrender value, and states that the defendant at no time has claimed such surrender value and that a court of equity is with-

out power to compel the defendant to claim the cash surrender value." The beneficiary of the policy, defendant's father, was not made a party defendant to the proceedings. After a hearing the chancellor found, *inter alia*:

"2. That the cash surrender value of the life insurance policy upon the life of Alfred Diamond is not such personal property or thing in action belonging to the defendant, or property, money or thing in action due to or held in trust for the defendant which the plaintiff, Fidelity Coal Company can reach by a creditor's complaint in chancery.

"3. That it can not in equity and good conscience grant the relief prayed for in the plaintiff's amended complaint.

"4. That it should not compel the defendant, Alfred Diamond, to assign his policy to the plaintiff, nor should it compel the defendant, Alfred Diamond, to deliver said policy to and to make a loan agreement with the defendant, The Mutual Life Insurance Company of New York, for a loan or to surrender said life insurance policy to the defendant, The Mutual Life Insurance Company of New York, accept the proceeds of the loan or the net cash value thereof, and pay said proceeds or so much thereof as may be necessary unto the plaintiff to apply upon or satisfy its judgment.

"5. That because there is not pending an application for a loan upon said insurance policy, and because the defendant, Alfred Diamond, has not delivered said policy to and made a loan agreement with the defendant, The Mutual Life Insurance Company of New York, for a loan or for the net cash surrender value of said policy, the Court can not compel the defendant, The Mutual Life Insurance Company of New York, to pay unto the plaintiff, Fidelity Coal Company, the loan or the net cash value of said policy to apply upon or satisfy its judgment."

The decree dismissed the amended complaint for want of equity. Plaintiff appeals.

The Mutual Life Insurance Company of New York, defendant, has not seen fit to file a brief in this court.

Plaintiff contends: "The interest of the debtor in an endowment life insurance policy, issued on the life of the defendant, Alfred Diamond, is personal property or a thing in action belonging to the defendant, Alfred Diamond, or property or money or a thing in action due to or held in trust for the defendant"; and "The interest of the debtor in the endowment life insurance policy issued on the life of the debtor and over' which the debtor exercises control should be reached by a creditor's complaint in chancery and applied in satisfaction of the debtor's indebtedness. (A) Life insurance is a valuable asset. (B) The cash surrender value of an insurance policy can be reached by a creditor's complaint." Narrowed down, plaintiff's sole contention is that its complaint is in the nature of a creditor's bill, and it can reach the cash surrender value of the insurance policy, and defendant Diamond can be directed to surrender the policy for cancellation and have the cash surrender value paid by defendant Mutual Life Insurance Company of New York to plaintiff to apply on its judgment.

Defendant contends:

"(2) No application for a loan on the policy in question was pending nor has the defendant at any time delivered the policy for the purpose of demanding its cash surrender value, and under such circumstances the loan or cash surrender value cannot be reached by a creditor's bill.

"(3) The voluntary application for a loan or surrender of the policy is a condition precedent to the creation of any debt due to, or property interest in, defendant, and a court of equity will not compel an insured to take such steps.

"(4) The cash surrender or loan value of the life insurance policy in question cannot be reached by either garnishment or a creditor's bill under the facts existing in the case at bar.

"(5) The same rule that a creditor has no right to reach the cash surrender or loan value under the circumstances of the case at bar, applies in Illinois in a proceeding by creditor's bill as in a garnishment proceeding, because (1) the same prerequisites as to the property or money belonging to or due to the debtor exist in both cases, (2) both proceedings are similar in form and purpose, and (3) the garnishment court has full equitable powers."

In 1937, the legislature passed the following statute (ch. 73, par. 850, sec. 238, Ill. Rev. Stat. 1937 [Jones Ill. Stats. Ann. 66.913]):

"All proceeds payable because of the death of the insured and the aggregate net cash value of any or all life and endowment policies and annuity contracts payable to a wife or husband of the insured, or to a child, parent or other person dependent upon the insured, whether the power to change the beneficiary is reserved to the insured or not, and whether the insured or his estate is a contingent beneficiary or not, shall be exempt from execution, attachment, garnishment or other process, *for the debts or liabilities of the insured incurred subsequent to the effective date of this Code,* except as to premiums paid in fraud of creditors within the period limited by law for the recovery thereof." (Italics ours.)

While that statute does not apply to the instant proceeding it expresses the present public policy of this State upon the question before us, and if the decision of that question was close or doubtful that statute might have some weight in the determination of the question. However, disregarding that statute, we have reached the conclusion, after a careful review of the authorities submitted by both parties, that plain-

tiff's contention cannot be sustained. A leading case on the question now before us is *Farmers & Merchants Bank v. National Life Ins. Co.,* 161 Ga. 793. There the judgment creditor filed a suit in equity in which it sought to have the court declare the insurer company was the holder of the cash surrender value of a life insurance policy as an equitable asset belonging to the judgment debtor that ought to be applied by the court to the payment of the bank's execution. The insurance company admitted the facts as to the cash surrender and cash loan values of Brantley's policy but asserted that until Brantley surrendered his policy and demanded its cash surrender value or demanded a loan under the provisions of the policy, it owed him nothing and had no assets of his in its hands that could be reached by Brantley's creditors. Both Brantley and the insurance company demurred generally to the petition on the ground that there was no equity in it and that no cause of action was stated. The demurrer was sustained and the plaintiff excepted. The Supreme court of Georgia, in affirming the action of the trial court, states (pp. 795, 797, 798) :

". . . A court of equity certainly can not compel a policyholder to make application for and secure a loan from the company, even though under the conditions stated in the policy the loan would automatically follow the making of the application therefor. And while there might apparently be more ground for holding that the cash-surrender value of the policy could be reached by garnishment proceedings, because of its closer analogy to a debt due the insured, we do not think that the analogy can be trusted to such an extent as would justify a court of equity in adjudging that it is collectible in proceedings like the present, or in any other proceedings at law or equity, until the policyholder himself has voluntarily taken steps to make effective the provisions in the policy relating to a cash-surrender value thereof. . . . But we rest our

decision in the case upon the ground—and it seems to us perfectly sound—that neither the cash-surrender value nor the cash-loan value of a policy of life insurance like that in question here can be treated as a debt due the insured by the company, until steps have been taken by the insured to effect the loan or to withdraw in cash the accumulated surplus apportioned to the policy by the company. *The making of the application for the loan and the surrender of the policy to withdraw in cash the accumulated surplus apportionable to the policy are acts dependent upon the volition of the assured, and a court of equity can not compel him to take those steps, nor can it render a decree which renders the taking of those steps upon the part of the insured unnecessary.* That the insured shall do certain things in order to withdraw the cash-surrender value of the policy, or to secure a loan, is a part of the contract; and whether he will perform these essential acts is a matter which he can decide and has a right to decide without the interference of a court of equity. There was no debt due from the insurance company to the insured, under the facts recited, that could be reached at law by the process of garnishment; nor can equity, which as a general rule follows the law, bring to bear upon the principal debtor in this case, that is, the insured, any force to compel him to perform acts which he does not desire to perform in order to convert a contingency into an actual debt upon the part of the insurance company. The right of the plaintiff can not be considered as analogous to the right of a specific performance; for specific performance depends upon contract. And where one has contracted to do a specific thing, as for instance, to execute a deed, a court of equity, while it will not compel the actual signing of the deed, will render a decree which will have the same effect as a deed duly executed by the promisor. . . . It follows from what we have said that the court was

right in sustaining the general demurrer to the petition.'' (Italics ours.)

Plaintiff concedes that the Georgia case supports defendant's contention.

In 14 Am. Jur. 718, sec. 91, the author states: ''A court of equity is not authorized to subject the cash surrender value of a policy to the debts of the insured where the contract was not taken out as a means of defrauding creditors and the rights of the beneficiary will be destroyed thereby. The rule is the same notwithstanding the power to change beneficiaries is reserved. In the absence of an intent to defraud creditors in taking out life insurance, the weight of authority appears to be that unless or until the insured has exercised an option to take the cash surrender value of his policy or the contract has matured by the termination of the endowment period, the value of the policy may not be subjected to the claims of his creditors. Even where a policy is payable to the insured's executors, administrators, and assigns, it is held by some authority that the cash surrender value does not represent a debt due the insured by the insurer which may be reached by a creditor's bill until the insured has taken the steps requisite to a withdrawal in cash of such value. There is, however, a distinction in these respects between the cash surrender value which the insured receives as an incident of the surrender or cancellation of the policy and the amount which, in case of policies with endowment features, becomes payable to the insured during his lifetime. The latter represents the proceeds of an investment rather than insurance, and the interest of the insured under a policy containing this investment feature is property subject to a creditor's bill.''

In the instant case, the judgment was entered three and one-half years after the policy in question was issued, and there is no allegation in the complaint that

the policy was taken out, or premiums paid thereon, to defraud creditors.

In 44 A. L. R., in the annotations to the case of *Farmers & Merchants Bank v. National Life Ins. Co., supra,* the annotator states (pp. 1188, 1189):

"A distinction bearing on the subject matter under annotation is to be observed between the cash surrender value which the insured may be entitled to receive in the event of and as an incident of the surrender or cancelation of the policy—whether it is exclusively a policy of life insurance or also includes endowment or tontine features—prior to its maturity, and the amount which, in case of policies with endowment or tontine features, becomes payable to the insured during his lifetime as a result of the direct primary obligation of the insurance company, even though that primary obligation may be conditioned upon the exercise of certain options by the insured. . . .

"When the distinction above referred to is attended to, the weight of authority appears to be to the effect that, in the absence of the exercise by insured of his option to take the cash-surrender value of a policy which has not matured, his right in that regard is not subject to the claims of his creditors."

No Illinois case on all fours with the instant one has been called to our attention by either of the parties, but defendant cites Illinois cases involving garnishment proceedings in which the principles stated in the Georgia case have been followed.

In *Bethards v. Metropolitan Life Ins. Co.,* 287 Ill. App. 7, it was held that garnishment will not lie to reach the cash surrender value of an insurance policy where the insured had not complied with the terms of the policy by surrendering the policy to the insurance company.

In *Drysch v. Prudential Ins. Co.,* 287 Ill. App. 68, plaintiff, in a garnishment proceeding, sought to reach the cash surrender value and loan value of an endow-

ment policy issued on the life of the judgment debtor. The First Division of this court, in an opinion by Mr. Justice McSurely, states (pp. 69, 70, 71):

". . . It was stipulated that the insured had not exercised any of her options given by the terms of the policy and has not made application for the cash surrender value nor the loan value of the policy, and that if she had been called upon to do any of these acts she would have refused to do so.

"It is the general rule that a judgment creditor may by garnishment recover only such indebtedness as his debtor might recover in an action against the garnishee. *Pogline v. Central Mut. Ins. Co.*, 280 Ill. App. 5. There are cases in other jurisdictions holding that a judgment creditor could not garnish the loan or cash surrender value unless all the conditions precedent have been complied with. *Farmers' & Merchants' Bank v. National Life Ins. Co.*, 161 Ga. 793; *Van Dyke Co. v. Moll,* 241 Mich. 255; *Kothe v. Phoenix Mut. Life Ins. Co.*, 269 Mass. 148; *Hilliard v. Wisconsin Life Ins. Co.*, 137 Wis. 208.

"We have held to the same effect in the recent case of *Larson v. McCormack,* 286 Ill. App. 206. In that case plaintiff had obtained a judgment against McCormack and had garnished the Massachusetts Mutual Life Insurance Company; application had been made by the insured for a loan on the policy, which had been approved by the company. The statute makes it obligatory upon a life insurance company to make such a loan. A check representing the amount of the loan, payable to the order of the insured, had been forwarded by the main office of the company to the Chicago agency, with instructions not to deliver the check to the insured until he had nominated a beneficiary of the policy; although the loan had been passed by the company and the check for the amount of the loan was in the hands of its agent at the time the summons was served, we held that garnishment would not lie until

the loan had been consummated, nothing remaining to be done except to deliver the check to the insured. Leave to appeal from the judgment against the judgment creditor was denied by the Supreme Court.

"If the amount of the loan under such circumstances is not subject to garnishment, clearly it would not be subject to garnishment in the case at bar where no application has been made for a loan.

"It is equally clear that the cash surrender value of the policy is not subject to garnishment. The insured could make no claim for the cash surrender value unless she was living at the end of one year from the policy's date and demanded the surrender value. Both these contingencies were uncertain."

It will be noted that 'the opinion cites with approval *Farmers & Merchants Bank v. National Life Ins. Co., supra.* See, also, *Bethards v. Metropolitan Life Ins. Co., supra.*

Plaintiff contends that a creditor's bill and a garnishment suit are not analogous proceedings and therefore the Illinois Appellate court decisions cited by defendant do not apply.

In *Addyston Pipe Co. v. City of Chicago,* 170 Ill. 580, 584, the court states: "The process of garnishment and a creditor's bill are, in effect, instituted for the same purpose. They are, as a general rule, instituted to reach money in the hands of a third party due and owing from a judgment debtor to a judgment creditor. A reference to the statute under which the two proceedings are instituted will show their similarity." The court, after quoting section 1 of the Garnishment Act and section 49 of the Chancery Act, further states (p. 585):

"Under the section of the statute providing for garnishment, where an execution has been issued and returned no property found a summons may be issued against the person supposed to be indebted, commanding him to answer as garnishee; under the other stat-

ute, where an execution has been issued and returned no property found a creditor's bill may be filed. The object attempted to be reached in each case is practically the same. In one case a judgment may be rendered as in an action at law, while in the other a money decree may be rendered. An execution may issue in either case."

In *Goodwine State Bank v. Wise,* 263 Ill. App. 291, the court said (p. 295) : ". . . it is also settled law, that a creditor's bill is considered in the same legal category as a garnishment proceeding when filed to accomplish the same purpose."

Sections 24 and 22 of chapter 62 (Garnishment Act) confer equitable powers upon the court in garnishment proceedings.

In *LaSalle Opera House Co. v. LaSalle Amusement Co.,* 289 Ill. 194, a garnishment proceeding involving a question different from the one in the instant case, the court, after referring to *Adams v. Young,* 200 Mass. 588, states (p. 199) : "That case was a suit in equity while this is a proceeding in garnishment, but under section 24 of the Garnishment act, which gives the court power to make all orders in regard to property under the control of the garnishee which may be necessary or equitable between the parties, the court exercises an equitable jurisdiction."

Plaintiff's counsel have made an earnest effort to find authorities that support plaintiff's contention but after a careful examination of the cases cited we have reached the conclusion that they do not directly bear upon the question before us. *Cohen v. Samuels,* 245 U. S. 50, and *Ehrhart v. New York Life Ins. Co.,* 45 F. (2d) 804, are bankruptcy cases. In *Farmers & Merchants Bank v. National Life Ins. Co., supra,* the court said (p. 798) :

"Nor can the bankruptcy law be applied by analogy here. There are provisions in the bankruptcy law which perhaps might authorize a court to render a decree

making available to the trustee in bankruptcy the cash-surrender value of a policy like this, but such a decree would be dependent upon the provisions in the bankruptcy law.''

See, also, *Chelsea Exchange Bank v. Travelers' Ins. Co.,* 160 N. Y. S. 225, 227.

In *Addiss v. Selig,* 264 N. Y. 274, cited by plaintiff, a statute permitted a creditor to recover a portion of the insurance payable to a married woman, which statute contained the following: '' '. . . where the premium actually paid annually out of the husband's property exceeds five hundred dollars, that portion of the insurance money which is purchased by excess of premium above five hundred dollars, is primarily liable for the husband's debts. . . .' '' (p. 278) A subsequent statute changed the law to exempt such insurance. The court states (p. 279): ''The Insurance Law, above referred to, section 55–a, in effect March 31, 1927, changed this right of creditors, and the only question before us is whether it applies to pre-existing creditors like the plaintiffs.'' The court held that the prior statute created a vested right in the creditor in that case and that the new law was not retroactive. Several New York cases cited by plaintiff that involve the question of insurance transferred in fraud of creditors, are not in point. *Columbia Bank v. Equitable Life Assur. Soc.,* 80 N. Y. S. 428, 433, also a New York case, seems to be an authority against plaintiff's contention.

*Anthracite Ins. Co. v. Sears,* 109 Mass. 383, cited by plaintiff, is discussed in *Boisseau v. Bass,* 100 Va. 207, 214, where the court states:

''An important distinction between that case and the one at bar is that it was there admitted, as one of the agreed facts in the case, that the insurance company was in the habit of taking up policies, like the one there involved, when the company and the holder of the policy could agree upon terms; giving it as

stated by the court a present market value. No such fact is admitted in the case at bar. On the contrary, we have nothing before us but the policy, under which, as already pointed out, there was no existing indebtedness. If, however, that case can be relied on as contravening the well settled rule to which we have adverted, we must decline to follow it."

*Kothe v. Phoenix Mutual Life Ins. Co.*, 269 Mass. 148, cited by plaintiff, does not support plaintiff's contention. There it appeared that one MacKay had occupied a position of trust in the employ of the plaintiff and had appropriated to his own use certain funds of his employer. Prior to the time that plaintiff brought the suit against the insurance company he had brought a creditor's bill to reach and apply certain assets of MacKay, including the cash surrender value of the policy issued to MacKay by the defendant. A .final decree was entered in that suit finding that MacKay was indebted to the plaintiff in the sum of $3,225, and ordering the payment of the same, and in default of payment appointing a special master to sell the policy in question at public auction and to deliver an assignment of the same to the purchaser. The special master purported to sell all of the right, title and interest of MacKay in the policy and executed an assignment of the same to the plaintiff. The plaintiff then made a demand on the defendant insurance company to pay him the cash value of the policy, which the said defendant refused to pay without the surrender of the policy. The plaintiff then sued the defendant insurance company to recover the cash surrender value of the policy issued on the life of MacKay, which contained the following provision: "At any time after the premiums for two years have been paid the Company will purchase this policy for its cash value on satisfactory release by the insured and assigns and surrender at the Home Office while it is in force, or within the thirty-one days of grace hereinbefore provided." (p. 149) The

defendant denied liability "to pay such surrender value on the sole ground that the plaintiff has not tendered the policy to it." (p. 150) Judgment was entered against the defendant and it appealed, and the sole contention raised by the defendant insurance company upon appeal was that it was not liable to pay the surrender value because plaintiff had not tendered the policy to it. While certain obiter language is used by the court in the opinion, nevertheless, the court held (p. 151): "It is plain that compliance with the surrender clause in a contract of insurance is a condition precedent to recovery. *Boruszweski v. Middlesex Mutual Assurance Co.,* 186 Mass. 589, 590," and the court held in favor of the defendant although it appeared that MacKay had absconded and could not be reached.

Several other cases are cited by plaintiff but it would unduly lengthen this opinion to refer specifically to them. Suffice it to say, we do not think they support plaintiff's contention.

The decree of the circuit court of Cook county must be and it is affirmed.

*Decree affirmed.*

FRIEND, P. J., and SULLIVAN, J., concur.