FARMERS AND MERCHANTS BANK *v.* NATIONAL LIFE
INSURANCE COMPANY *et al.*

The cash surrender and cash loan value of a policy of life insurance accruing at the end of a specified tontine period is not subject to garnishment by creditors of the insured; nor will such value be made available to the judgment creditor of the insured by a court of equity in proceedings instituted for the purpose of obtaining equitable relief analogous to a process of garnishment at law. Applying this rule, the court did not err in sustaining the general demurrer to the petition.

No. 4976. FEBRUARY 11, 1926.

Equitable petition. Before Judge Camp. Laurens superior court. May 26, 1925.

*Hardwick & Adams,* for plaintiff.

*Blackshear & Harrell, Slaton & Hopkins, George B. Young,* and *G. C. Bidgood,* for defendants.

BECK, P. J. The Farmers and Merchants Bank obtained in the city court of Dublin two common-law judgments against F. A. Brantley, each for the sum of $394.65. While the suit was pending upon which the second of these judgments was obtained, the bank sued out summons of garnishment against the National Life Insurance Company, directing it to answer to the city court of Dublin what property, money, or effects it had in its hands belong-

---

Garnishment 28 C. J. p. 166, n. 84, 85, 86, 88, 90, 90 New.

ing to the defendant. The garnishee filed its answer denying that it owed Brantley anything, or that it had in its hands any property, money, or effects belonging to him. It admitted, however, that Brantley was the holder of its life-insurance policy No. 364088, payable to his executors, administrators, and assigns, and that on September 1, 1924, and on the date of its answer the policy had a cash-surrender value of $252 and a cash-loan value of $276; but it alleged that Brantley had neither surrendered his policy nor made application for its cash-surrender value, nor had he made any application for a loan on the policy in accordance with its provisions, and it therefore asserted that since Brantley had not exercised either of these options it owned him nothing and had no property, money, or effects of his in its hands. This answer was traversed by the bank. While the issue thus made was pending in the city court the bank brought its petition against Brantley and the insurance company, seeking to merge the proceedings in the city court into an equitable proceeding and have a court of equity declare that the insurance company was the holder of the equitable assets belonging to Brantley that ought to be applied by the court to the payment of the bank's executions. In answer to this petition the insurance company admitted that the facts as to the cash-surrender and cash-loan values of Brantley's policy were as already set out, but asserted that until Brantley surrendered his policy and demanded its cash-surrender value, or applied for a loan under the provisions of the policy, it owed him nothing and had no assets of his in its hands that could be reached by his creditors.

Both Brantley and the insurance company demurred generally on the ground that there was no equity in the petition and that no cause of action was stated. The demurrer was sustained, and the plaintiff excepted.

The plaintiff contends that the provision in a policy of life insurance that at the end of a specified period the insured shall have the right, without the assent of any beneficiary (in the instant case the estate of the insured is the beneficiary), to withdraw in cash the accumulated surplus apportioned to the policy by the company, or to borrow a certain amount of money upon the sole security of the policy, creates an asset that may be reached and attached by a creditor of the insured during the lifetime of the insured. We have reached a conclusion that compels us to refuse assent to this

proposition upon which the petitioner based his case. In brief, the contention of the plaintiff is that the cash-surrender and cash-loan value of a policy of life insurance accruing at the end of a specified tontine period is subject to garnishment by creditors of the insured; and that this is true although the insured is not insolvent, and has made no application for the loan value nor offered to surrender the policy in order to withdraw the cash value. We do not think that a discussion is necessary to show that the loan value in a policy of life insurance can not be made available to garnishment process; the nature itself of the loan value precludes its being held to be a debt due the insured by the company. Until steps have been taken by the insured to effect a loan, in case he should desire to take advantage of the provision in the policy relating to a loan, and until the loan transaction is completed, the insurer is not in any sense indebted to the insured; and the provision as to the loan value of the policy is a mere privilege to the insured, to be taken advantage of by him upon the terms and conditions prescribed in the policy. A court of equity certainly can not compel a policyholder to make application for and secure a loan from the company, even though under the conditions stated in the policy the loan would automatically follow the making of the application therefor. And while there might apparently be more ground for holding that the cash-surrender value of the policy could be reached by garnishment proceedings, because of its closer analogy to a debt due the insured, we do not think that the analogy can be trusted to such an extent as would justify a court of equity in adjudging that it is collectible in proceedings like the present, or in any other proceedings at law or equity, until the policyholder himself has voluntarily taken steps to make effective the provisions in the policy relating to a cash-surrender value thereof. Counsel for the plaintiff in their brief quote the following from the treatise on garnishment in 28 Corpus Juris.: "A life insurance company's liability for accrued cash accumulations is subject to garnishment. The same is true of the surrender value of the policy after the expiration of the specified accumulation period, but not prior thereto, except, in some jurisdictions, by so-called equitable garnishment, and in the case of a perpetual policy, with the right of surrender, assured has no garnishable interest prior to the exer-

cise of his right of surrender. It has been held that an option to apply cash accumulations or surrender value upon future insurance will not prevent the insurer's liability from being subject to garnishment, where such option has not been exercised." 28 C. J. 168. They insist that the doctrine laid down here supports their contention. In part it apparently does; for it is stated broadly that a life insurance company's liability for accrued cash accumulations is subject to garnishment, and that there are decisions holding in effect that an option to apply cash accumulations or surrender value upon future insurance will not prevent the insurer's liability from being subject to garnishment where such option has not been exercised. But it will also be noticed in this connection that the writer of the article referred to states, "but there is authority to the contrary." One of the cases cited in support of the text is that of Ellison *v.* Straw, 119 Wis. 502 (97 N. W. 168). And in their argument counsel for the plaintiff insist that the facts in the case at bar bring it squarely within the rule laid down in the case just cited, and make that case controlling here if the same be followed by this court. That case differs in material particulars from the instant case, as will appear from the following ruling of the court: "But again it is insisted that no absolute debt existed to the defendant Alonzo W. Straw, unless it was shown that he had exercised his election that the accumulation be paid to him in money, instead of being applied by the insurance company either to provide an annuity for future premiums on this policy, as it was agreed that it should be if he exercised no election within sixty days, or to the purchase of other forms of insurance. We shall not deem it necessary to decide whether the exercise of Straw's election so constituted a condition precedent to the absolute liability to him that garnishment would not lie in its absence. It suffices for the determination of this contention by the appellants that the trial court has affirmatively found that at the time of the service of the garnishee summons the accumulation had become payable absolutely. In support of this finding of fact, it must be assumed that any steps legally necessary to its correctness were established by the evidence. Appellants have seen fit to come here without exception to the findings, and without a bill of exceptions to inform us of the proofs. It is not impossible that there may have

been definite proof of the exercise by A. W. Straw of the election vested in him by the policy, and of the making of a demand for this sum. If such facts were not established, and were necessary to the ultimate fact found by the court, appellants should have reserved exception to that finding and brought the evidence up on this appeal." And certain other decisions, which we will not take up in detail, relied upon by plaintiff, are based upon facts different from those in this record, though in some of them language can be found of an import at variance with our holding in this case, and which is more in accord with the contentions of the plaintiff. But a different rule is laid down in decisions by the appellate division of the Supreme Court of New York, and we think that this is the sounder rule. See Columbia Bank *v.* Life Assurance Society, 80 N. Y. Supp. 428 (79 App. Div. 601). But we rest our decision in the case upon the ground—and it seems to us perfectly sound—that neither the cash-surrender value nor the cash-loan value of a policy of life insurance like that in question here can be treated as a debt due the insured by the company, until steps have been taken by the insured to effect the loan or to withdraw in cash the accumulated surplus apportioned to the policy by the company. The making of the application for the loan and the surrender of the policy to withdraw in cash the accumulated surplus apportionable to the policy are acts dependent upon the volition of the assured, and a court of equity can not compel him to take those steps, nor can it render a decree which renders the taking of those steps upon the part of the insured unnecessary. That the insured shall do certain things in order to withdraw the cash-surrender value of the policy, or to secure a loan, is a part of the contract; and whether he will perform these essential acts is a matter which he can decide and has a right to decide without the interference of a court of equity. There was no debt due from the insurance company to the insured, under the facts recited, that could be reached at law by the process of garnishment; nor can equity, which as a general rule follows the law, bring to bear upon the principal debtor in this case, that is, the insured, any force to compel him to perform acts which he does not desire to perform in order to convert a contingency into an actual debt upon the part of the insurance company. The right of the plaintiff can not be

considered as analogous to the right of a specific performance; for specific performance depends upon contract. And where one has contracted to do a specific thing, as for instance, to execute a deed, a court of equity, while it will not compel the actual signing of the deed, will render a decree which will have the same effect as a deed duly executed by the promisor.

Nor can the bankruptcy law be applied by analogy here. There are provisions in the bankruptcy law which perhaps might authorize a court to render a decree making available to the trustee in bankruptcy the cash-surrender value of a policy like this, but such a decree would be dependent upon the provisions in the bankruptcy law.

It follows from what we have said that the court was right in sustaining the general demurrer to the petition.

*Judgment affirmed. All the Justices concur.*

HINES, J., concurring specially. I can not agree to all that is said in the majority opinion. I agree that a court of equity will not compel a policyholder to make application for and secure a loan from the insurer, and to apply the proceeds of the loan to a claim held by a creditor of the policyholder. But where the policy of life insurance is payable to the estate of the policyholder, and the policy has a cash surrender value, a court of equity will, in a proper case, subject such cash surrender value to the claim of a creditor. In such a case a court of equity will compel the insured to do, or do for him, the things necessary to be done in order to secure such cash surrender value, and will apply the same to the claim of the creditor. The rights of creditors are favored by the courts. Civil Code (1910), § 3217. Courts of equity should assist creditors in reaching equitable assets in any case where to refuse interference would jeopardize the collection of their debts. § 3217. Equitable assets may be reached by a creditor in any case where he shows that there is danger of not being satisfied out of legal assets. Civil Code, § 4601. I am clear that under the above principles the cash-surrender value of a policy upon the life of an insured, payable to his estate, can in equity, under a proper case, be reached by a judgment creditor.

I concur in the result reached solely because the petition fails to allege that there is danger that the plaintiff's claim can not be satisfied out of legal assets of the debtor.