## Taylor v. Taylor et al.

*Robert W. Archbald, Jr.,* for plaintiff.
*Joseph S. Conwell,* for garnishee.

McDEVITT, P. J., September 22, 1938.—This action grows out of a writ of foreign attachment issued by plaintiff on March 28, 1934, against defendant's alleged property in the hands of the Massachusetts Mutual Life Insurance Company, garnishee, upon whom service was obtained April 2, 1934.

Judgment was entered on January 9, 1935, and, pursuant to rule and affidavit, damages assessed in the sum of $9,684 as of the same date. The garnishee entered an appearance, interrogatories were filed by plaintiff and answered by the garnishee.

It is important that dates be borne in mind so the court here presents a chronological list.

February 15, 1910. Policy No. 264,328 issued to defendant by garnishee, Massachusetts Mutual Life Insurance Company.

September 26, 1912. Plaintiff and defendant entered into agreement of support.

January 16, 1913. Defendant named Ethel Hopkins Taylor (second wife), as beneficiary under policy.

May 15, 1918. Policy No. 264,328 lapsed for nonpayment of premium. Defendant continued policy as paid-up life insurance.

October 19, 1932. Collector of Internal Revenue, Philadelphia, received assessment against defendant for 1930 income tax, $1,686.12.

November 7, 1932. Collector of Internal Revenue filed lien with the Clerk of the United States District Court, Eastern District of Pennsylvania, and Prothonotary of Berks County, Pa.

March 28, 1934. Writ of foreign attachment issued.

April 2, 1934. Service of writ upon garnishee.

May 23, 1934. Defendant filed request for change of beneficiary from Ethel H. Taylor to executors and administrators.

May 24, 1934. Defendant assigned policy to Collector of Internal Revenue, Philadelphia District.

May 26, 1934. United States Marshal served upon garnishee at office of general agent in Philadelphia notice of lien, notice of levy theron, and warrant for distraint.

June 5, 1934. United States Marshal served upon garnishee at home office, Springfield, Mass., notice of lien, notice of levy thereon, and warrant for distraint.

January 9, 1935. Judgment entered. Damages of $9,684 assessed.

January 10, 1935. Acting chief, miscellaneous tax division, advised garnishee it would be held personally liable under section 1114 (e) of the Revenue Act of February 26, 1926, 44 Stat. at L. 9, if it paid the insurance proceeds to anyone other than the United States.

January 22, 1935. Collector of internal revenue filed notice of lien with the Clerk of the United States District Court, District of Massachusetts.

January 23, 1935. Collector of internal revenue filed notice of lien with Register of Deeds, Hampden County, Mass.

October 29, 1936. Ethel Hopkins Taylor commenced divorce proceedings in Philadelphia County, Pa.

November 29, 1937. Final decree in divorce granted by Court of Common Pleas No. 3, Philadelphia County, Pa.

On February 15, 1910, the garnishee issued its policy of life insurance No. 264,328 to defendant, Howard D. Taylor. On May 15, 1918, this policy lapsed because of nonpayment of premiums. Under one of the several provisions in the policy, the garnishee continued the insurance as paid-up life insurance as of that date, valued at $3,358. Said policy had a cash surrender value of $2,-707.49 which could have been collected by the insured as of that date, upon surrender of the policy and 30 days' notice. The insured elected to exercise the alternative of paid-up life insurance.

The action of plaintiff is based upon an agreement of support, arising out of her divorce from defendant, and entered into as of September 26, 1912. At that time the beneficiaries of the policy were the executors and administrators of the insured; but on January 16, 1913, defendant, Howard D. Taylor, selected his then wife, Ethel Hopkins Taylor, as the beneficiary under the policy. She remained the beneficiary until May 23, 1934, at which time the insured filed a request for amendment of the contract, designating his executors and administrators as the beneficiaries, but did not, however, surrender the policy so as to permit thereon the endorsement of the change. As a matter of record Ethel Hopkins Taylor possessed the policy. Two days later, on May 25, 1934, the company received an assignment of the policy from defendant, Howard D. Taylor, to the collector of internal revenue. Neither did the policy accompany this request.

In connection with the dates mentioned however, the following must be borne in mind: On October 19, 1932, the Collector of Internal Revenue at Philadelphia received what is known as the assessment list, containing an assessment against defendant, Howard D. Taylor, for

income tax for 1930, in the sum of $1,686.12. On November 7, 1932, the collector of internal revenue filed notice of lien with the Clerk of the United States District Court for the Eastern District of Pennsylvania and with the Prothonotary of the Court of Common Pleas of Berks County, Pa.

It must be borne in mind that these notice liens were filed approximately 17 months before plaintiff in this suit issued a writ of foreign attachment, and nearly 18 months before the garnishee was served.

Subsequently, on January 22, 1935, a notice of lien was filed in the United States District Court of Massachusetts, and on January 23, 1935, a notice of lien was filed with the Register of Deeds of Hampden County, Mass. On October 29, 1936, Ethel Hopkins Taylor instituted divorce proceedings in Philadelphia County, and a final decree in divorce was issued by the Court of Common Pleas No. 3, on November 29, 1937.

All these dates are important because of the theory upon which plaintiff proceeds. If the creation of the fund, called paid-up insurance, which came into existence when the policy lapsed on May 15, 1918, were a debt due by the garnishee to defendant, Howard D. Taylor, then perhaps the attachment would lie. As a matter of fact, and in keeping with the weight of authority, it is clear that as of the date of attachment defendant had only a right to exercise, to wit, surrender the policy and notify the insurance company in writing of a selection to take the so-called cash value. If the relationship existing between the two were not that of creditor and debtor as of that date, the attachment would not lie, and further discussion would be unnecessary.

It is obvious, however, that the insurance policy is a contract between the insured and insurer. In this instance the debtor and garnishee being in the positions they were as of the date of attachment, the insured could not claim the cash surrender value, because he had not complied with the terms of the contract between him-

self and the insurance company, the garnishee. It was just as important that he surrender the policy as that he comply with the other terms, that is, of an election or notice in writing.

The purpose of the necessity for surrendering the policy is obvious. If the policy had been delivered to the custody of the beneficiary, and prohibited a change of beneficiary without the consent of the beneficiary, it might in many instances make possible the commission of a fraud. If a bona fide reason be furnished for failure to deliver the policy, such as its loss by theft or fire, or other unavoidable risks, it would be possible to effect the change by mutual consent; but in the absence of any good reason for the failure to comply with the terms of the contract the company is certainly under no obligation to do anything until all its conditions have been satisfied. In this policy the insured had reserved the right to change the beneficiary, but the contract required its production in order to make the change.

An attaching creditor stands in no better position than that of a judgment debtor in asserting his rights against a garnishee. See Goldstein, for use, v. Penny et al., 328 Pa. 78, Rankin v. Culver et al., 303 Pa. 401, and Edmunds v. Barascope Corp. et al., 104 Pa. Superior Ct. 173.

The service of a summons in garnishment will not change, impair, or interrupt the contractual relations existing between defendant and the garnishee. See Austin-Nichols & Co., Inc., v. Union Trust Co., Garnishee, et al., 289 Pa. 341.

An election on behalf of the insured is a purely personal right which he alone may exercise, and there is no authority that would permit an attaching creditor to compel him to make an election other than what he wishes to make himself. He cannot be compelled to perform such an act as would convert a contingency into an actual debt or liability on his part.

"Plaintiff cannot compel the garnishee to perform his contract with the principal debtor otherwise than in the

manner provided by the contract": 28 C. J. 245, 246, sec. 340.

A case almost on all fours with the one at bar was decided by the Supreme Court of Georgia in Farmers & Merchants Bank v. National Life Ins. Co., 161 Ga. 793, 44 A. L. R. 1184. It was there held without qualification that neither the cash surrender value nor the cash loan value of a life insurance policy could be treated as a debt due the insured by the company, until steps had been taken by the insured to create the loan or to withdraw in cash the accumulated surplus apportioned to the policy. These were identified as purely personal privileges.

The weight of authority appears to be that, in the absence of the exercise by the insured of his option to take the cash surrender value of the policy which has not matured, his right in that regard is not subject to the claims of his creditors. There is authority for this in the appellate courts of New York, Nebraska, Colorado, Virginia, Kentucky, Wisconsin, and Massachusetts.

The same conclusion was reached by the Supreme Court of Michigan in Isaac Van Dyke Co. v. Moll, 241 Mich. 255, 57 A. L. R. 692.

On a slightly different state of facts, the United States Circuit Court of Appeals for the Third Circuit held in Equitable Life Ins. Co. of Iowa v. Germantown Trust Co., 94 F. (2d) 898, that a surrender of a life insurance policy was not complete until the physical surrender of the policy and the payment of the fund to the insured.

Plaintiff has also raised the point that, since the service of the writ, certain dividends amounting to $125.51 have accumulated and credited to the account of defendant. This, counsel argues, validates the writ. With this, the court cannot agree, for a writ of foreign attachment holds only such funds as are in the hands of the garnishee at the time of the service of the writ, and is not a continuing service that may be thrown out like a dragnet.

The court is not required to determine the question of whether the Federal Government takes precedence over

the attaching creditor, for we could not sustain plaintiff's contention that the cash value in the present policy must be classified as rights to property.

Plaintiff assumed the burden of proving property of defendant in the hands of the garnishee at the time of the service of the writ, and in this she has failed.

The court, therefore, finds that there was no property of defendant in the hands of the garnishee at the time of the service of the writ, and the attachment is dissolved.

NOTE.—An appeal from the foregoing decree was taken to the Supreme Court but was withdrawn.