[No. 34570.  *En Banc.*  October 22, 1959.]

LUDWIG PICK, *Appellant,* v. ESTELLE B. PICK, *Respondent,* CALIFORNIA WESTERN STATES LIFE INSURANCE COMPANY, *Appellant,* NEW YORK LIFE INSURANCE COMPANY, *Garnishee Defendant,* NORTH AMERICAN LIFE ASSURANCE COMPANY, *Appellant.*[1]

[1]Reported in 345 P. (2d) 181.

*Kahin, Carmody & Horswill and Skeel, McKelvy, Henke, Evenson & Uhlmann,* for appellants.

*Jonson & Jonson,* for respondent.

HUNTER, J.—This is an appeal from a judgment rendered against two insurance companies as garnishee defendants.

On August 9, 1954, a decree of divorce was entered awarding the wife, the defendant therein, an absolute divorce on her cross-complaint against the plaintiff husband. She was also awarded monthly support money, alimony payments and attorney's fees. The insurance policies here in question were awarded to the plaintiff husband with certain conditions. He was directed to convert two life insurance policies on his life to paid-up policies, to maintain another policy in good standing, and to name the defendant wife as beneficiary until she either remarries or dies. If either of these events occurred he was directed to name the children as beneficiaries until they each reached the age of twenty-one years, at which time the paid-up policies would become his sole and separate property. The other policy would become his sole and separate property upon the additional event of the wife's remarriage or death. The decree further provided that the husband was not to mortgage, borrow, cash, or assign said policies, or in any manner cause the value of the insurance policies to be lessened.

The plaintiff left the state of Washington on July 15, 1954, and became domiciled in Oregon. Thereafter, he became delinquent in his support and alimony payments in the amount of $3,510, and did not pay the attorney's fees in the amount of six hundred dollars awarded the defendant in the divorce decree.

To recover the amounts due, the defendant filed an affidavit for a writ of garnishment to be issued to the life insurance companies on the basis of said sums being due and owing under the judgment obtained in the divorce proceeding. The insurance companies answered to the effect that they were the insurers on the life of Ludwig Pick, and the policies had cash surrender values of certain specified amounts.

· Judgment was thereafter entered against the insurance .companies in the amount of the cash surrender value of the policies without notice to the husband or the insurance companies. The pertinent part of the judgment reads as follows:

"ORDERED, ADJUDGED AND DECREED that the defendant, Estelle Pick, have and recover judgment against the North American Life Assurance Company. in the sum of $977.00 and that said insurance company is hereby ordered to pay said sum to Estelle Pick as the cash surrender value of policy No. 294564 issued on the life of Ludwig Pick, and it is further

"ORDERED, ADJUDGED AND DECREED that the defendant Estelle Pick, have and recover judgment against the California Western States Life Insurance Company in the sum of $2,-174.90 and that said insurance company is hereby ordered to pay said sum to Estelle Pick as the cash surrender value of Policy No. 509040 in the sum of $901.75 and the cash surrender value of Policy No. 579766 in the sum of $1,273.15."

The plaintiff and the insurance companies appeal.

■ The determinative issue raised by the appellants' assignments of error, is whether the answers of the garnishee defendant insurance companies show a clear admission of indebtedness. The appellants contend that the admission of the amount of the cash surrender value of an insurance policy is not a clear admission of indebtedness, and is therefore not subject to garnishment. We agree. The rule is well established in this country that the cash surrender value of insurance policies cannot be reached by garnishment. The rule is stated in 37 A. L. R. (2d) 286, § 5(b) as follows:

"Even though a life insurance policy has a cash surrender value which is available to the insured at his option, it is quite uniformly held by the courts that where the insured has not exercised his option to surrender the policy for its cash surrender value, a creditor of the insured cannot obtain such cash surrender value by means of garnishment proceedings, the general view being *that where the surrender option has not been exercised there is no such present fixed liability or existing indebtedness on the part of the insurer to the insured as is requisite to the maintenance of garnishment.*" (Italics ours.)

The case of *Farmers & Merchants' Bank v. National Life Ins. Co.*, 161 Ga. 793, 131 S. E. 902, 44 A. L. R. 1184, states the reasoning supporting the above rule:

" . . . we rest our decision in the case upon the ground —and it seems to us perfectly sound—that neither the cash-surrender value nor the cash-loan value of a policy of life insurance like that in question here can be treated as a debt due the insured by the company, until steps have been taken by the insured to effect the loan or to withdraw in cash the accumulated surplus apportioned to the policy by the company. The making of the application for the loan and the surrender of the policy to withdraw in cash the accumulated surplus apportionable to the policy are acts dependent upon the volition of the assured, and a court of equity can not compel him to take those steps, *nor can it render a decree which renders the taking of those steps upon the part of the insured unnecessary. That the insured shall do certain things in order to withdraw the cash-surrender value of the policy, or to secure a loan, is a part of the contract; and* whether he will perform these essential acts is a matter which he can decide and has a right to decide without the interference of a court of equity. There was no debt due from the insurance company to the insured, under the facts recited, that could be reached at law by the process of garnishment; nor can equity, which as a general rule follows the law, bring to bear upon the principal debtor in this case, that is, the insured, any force to compel him to perform acts which he does not desire to perform in order to convert a contingency into an actual debt upon the part of the insurance company." (Italics ours.)

In the instant case, the answers to the writs of garnishment did not show a clear admission of indebtedness. The indebtedness was contingent upon the surrender of the policies under the contract.

The respondent argues, however, that the answers to the writs of garnishment merely list the policies and state the cash surrender value; that there is nothing in the record to show the necessity of surrendering the policies for the money to be due and owing thereunder. We disagree.

The phrase "cash surrender value" of an insurance policy has a definite meaning. It is defined as " . . . the cash value—ascertainable by known rules—of a contract of in-

surance abandoned and given up for cancellation to the insurer by the owner, having contract right to do so. . . ." *In re Welling*, 113 Fed. 189. To obtain the cash surrender value of an insurance policy. it is therefore essential that the policy be surrendered. The appellant husband here was expressly prohibited by the divorce decree, upon which the respondent's judgment is predicated, from cashing the policy or doing any act that would lessen the value thereof. Any act of the husband to the contrary. would require a modification of the divorce decree.

The respondent further argues that the limitation imposed upon a judgment creditor to reach the cash surrender value of insurance policies, by garnishment, does not apply to the instant case as this is a judgment for support and alimony. We find no basis for such a distinction. The respondent sought the issuance of the writ of garnishment, in this proceeding, as a judgment creditor and her status as such is not changed by the nature of the indebtedness upon which her judgment is supported. The rule that the cash surrender value of insurance policies cannot be reached by judgment creditors in garnishment proceedings must therefore apply.

For the reasons heretofore stated, the court erred in entering judgment against the insurance companies. The judgment of the trial court is reversed and the cause is remanded with directions that an order of dismissal thereof be entered. It is so ordered.

WEAVER, C. J., HILL, DONWORTH, ROSELLINI, and OTT, JJ., concur.

MALLERY and FOSTER, JJ., dissent.

FINLEY, J. (dissenting)—The majority opinion states:

" . . . The rule is well established in this country that the cash surrender value of insurance policies cannot be reached by garnishment. The rule is stated in 37 A. L. R. (2d) 286, § 5 (b) as follows:

" 'Even though a life insurance policy has a cash surrender value which is available to the insured at his option, it is quite uniformly held by the courts that where the

insured has not exercised his option to surrender the policy for its cash surrender value, a creditor of the insured cannot obtain such cash surrender value by means of garnishment proceedings, the general view being *that where the surrender option has not been exercised there is no such present fixed liability or existing indebtedness on the part of the insurer to the insured as is requisite to the maintenance of garnishment.'* (Italics ours.)"

The situation in the instant case is by no means a typical one, where a judgment creditor attempts to implement or satisfy his judgment by garnishment of the cash surrender value of life insurance policies. The particular life insurance policies were before the divorce court when a division was made of the property of the parties to the divorce action. The court awarded the policies to the husband, but subjected them to the provision that they would be security for his obligation to pay support money under the decree.

The effect of such a provision in the decree is to keep the husband's property in the insurance policies under the continuing jurisdiction of the court to implement the terms of the decree if he failed to comply therewith. They are, therefore, subject to the disposition of the court for that purpose, rather than the discretion of the husband. See *Heuchan v. Heuchan,* 38 Wn. (2d) 207, 228 P. (2d) 470, 22 A. L. R. (2d) 1410. This jurisdiction of the court over the paid-up policies will be terminated only by the children attaining their majority, and, as to the other policy, by the additional event of the wife's remarriage or death. The instant garnishment action is ancillary to the divorce action (*Kelly v. Ryan,* 8 Wash. 536, 36 Pac. 478) and is a proper proceeding to enforce the support award. *Boudwin v. Boudwin,* 159 Wash. 262, 292 Pac. 1017. The cash surrender values of the policies represent definite property interests in specific amounts of money. The court's judgment in garnishment implements its continuing jurisdiction over the policies and is as binding upon the insurance companies as a demand by the husband would have been in the absence of the decree. The surrender value of the policies

became a due and definite indebtedness within the meaning of the garnishment statutes because the court properly acted in the husband's stead.

Appellants contend that the insurance companies may have to pay the insurance avails twice because the interests of the minor children in the policies have not been protected by a guardian *ad litem*.

I do not agree. The children have no property rights as such under a divorce decree. An award of *custody* is sufficient for the handling of support-money payments, and no guardian *ad litem* is necessary in connection therewith. The power of the court in a divorce action is only that which can be inferred from a broad interpretation of the divorce statutes. *Palmer v. Palmer*, 42 Wn. (2d) 715, 258 P. (2d) 475.

RCW 26.08.110 [*cf.* Rem. Supp. 1949, § 997-11] provides, *inter alia:*

". . . [the court] shall make provision for costs, and for the custody, support and education of the minor children of such marriage. . . . "

The court has no power to make a property settlement upon children as distinguished from an award of support, and a provision for security for the payment of support money does not change the award into a property interest in the children for which a guardian *ad litem* is necessary. The garnishee is, of course, entitled to protection from being required to pay the insurance avails a second time. RCW 7.32.300 affords this protection by its provision that

"It shall be a sufficient answer to any claim of the defendant against the garnishee founded on any indebtedness of such garnishee or on the possession by him of any personal property or effects . . . for the garnishee to show that such indebtedness was paid or such effects delivered . . . under the judgment of the court in accordance with the provisions of RCW 7.32.010 through 7.32.050, and 7.32.100 through 7.32.310."

I believe the judgment should be affirmed.