[No. 16499-6-I.   Division One.   March 18, 1987.]

SAFECO INSURANCE COMPANY OF AMERICA, ET AL, *Appellants*, v. CLYDE SKEEN, ET AL, *Respondents.*

*Phillip S. Miller, Bruce P. Babbitt,* and *Ferguson & Burdell,* for appellants.

*Stephen E. DeForest* and *Riddell, Williams, Irie, Bullitt & Walkinshaw,* for respondents.

HOROWITZ, J.*—Safeco Insurance Company and General Insurance Company, judgment creditors, appeal from an "Order Denying Plaintiffs' Motion for Special Order Directing Execution." The Superior Court held:

The Court has determined that it does not have statutory authority under RCW 6.04.020, RCW 6.04.040, or RCW 6.32.080 to direct the management of a judgment debtor's assets or contract rights for the benefit of a judgment creditor by ordering the defendant Clyde Skeen to exercise stock appreciation rights to shares of stock in The Boeing Company.

---

*This appeal was heard by a Supreme Court Justice, a retired Supreme Court Justice, and a Superior Court Judge sitting as Court of Appeals Judges Pro Tempore in Division One.

We affirm.

After obtaining a judgment for approximately $300,000 against Clyde and Helen Skeen, appellants conducted a deposition of Mr. Skeen in aid of execution. *See* CR 69(b). Mr. Skeen testified he was a senior vice–president of Boeing Company, and his compensation package included stock appreciation rights (SAR's).

The SAR's were granted to Mr. Skeen as a key employee of the Boeing Company. They are part of an Incentive Stock Option plan qualified under the Internal Revenue Code for favorable tax treatment. *See generally* 18B Am. Jur. 2d *Corporations* § 1985, at 831–32 (1985); 33 Am. Jur. 2d *Federal Taxation* § 3323 (1979). Mr. Skeen's SAR's are personal to him and are not transferable except by will or by the law of descent and distribution.

Mr. Skeen need not pay any cash to exercise a SAR. Rather, he would receive the difference between the stock option price and the market price on the day he exercised the SAR. Boeing SAR's may be exercised only upon notice to the corporate secretary and only during the third through twelfth business days following public release of quarterly financial information. The Incentive Stock Option Committee may establish dollar limits on the aggregate amount of SAR's which may be exercised during any one quarter. The committee also has sole discretion to pay the employee in cash, stock, or a combination of stock and cash. The complete text of the 1979 Stock Option Plan and 1982 Amendment thereto is set forth in an appendix to this opinion.

The SAR's at issue were granted in 1979. At the time of the hearing, Mr. Skeen held options for approximately 37,000 shares at an option price of approximately $30; exercise of all these SAR's for cash would gross over $1.1 million. Appellants brought a "Motion for Special Order Directing Execution" of Mr. Skeen's SAR's. Appellants did not seek execution upon the SAR's or garnishment against

Boeing,[1] but rather sought an order directing Mr. Skeen to exercise his SAR's and remit the proceeds to appellants or to the sheriff. The Superior Court denied the motion on the ground it had no statutory authority to order a judgment debtor to manage his assets for the benefit of a judgment creditor.

Appellants contend RCW 6.04.020 *et seq.* and RCW 6.32.080, when read together, supply the necessary statutory authority for the superior court to order Mr. Skeen to exercise his SAR's for the benefit of judgment creditors. Neither appellants nor respondents cite any case authority directly on point, and our independent research has revealed none.[2]

As a preliminary matter, the Skeens pointed out at oral argument this case is moot because Mr. Skeen retired July 1, 1985. The SAR's granted in 1979 expire the sooner of 10 years after grant or 12 months following cessation of employment. Additional SAR's granted in 1983, not at issue herein, expire the sooner of 10 years after grant or 6 months after death, disability, or retirement.

■ This court will review a moot case if it is a matter of continuing and substantial public interest. The three factors to be considered in determining whether there is the requisite public interest are:

> (1) the public or private nature of the question presented, (2) the need for a judicial determination for future guidance of public officers, and (3) the likelihood of future recurrences of the issue.

---

[1]The IRS served Boeing with a notice of levy totaling approximately $390,000 against all wages, salary and other income of Mr. Skeen. Since an IRS lien has priority over a state court judgment lien, appellants could not garnish Skeen's wages. *See generally* RCW 6.04.100(5); 26 U.S.C. § 6321 *et seq.*

[2]Appellants vigorously argue the broad definition of property applied to RCW 6.04.060. *E.g., Johnson v. Dahlquist,* 130 Wash. 29, 225 P. 817 (1924) (unliquidated claim for indebtedness subject to execution); *Woody's Olympia Lumber, Inc. v. Roney,* 9 Wn. App. 626, 513 P.2d 849 (1973) (unliquidated tort claim subject to execution). First, none of the cited cases deal with an option contract in general, let alone a stock option or SAR. Second, appellants do *not* seek to merely *execute* upon the SAR's, but to compel Mr. Skeen to *exercise* them.

*In re Myers,* 105 Wn.2d 257, 261, 714 P.2d 303 (1986).

This is an essentially private controversy. However, there is no case law directly on point, and the issue may recur given the number of executives entitled to SAR's.[3] We choose to review this case despite its mootness.

RCW 6.04.060 provides, "[a]ll property, real and personal, of the judgment debtor, not exempted by law, shall be liable to execution." RCW 6.04.020 provides:

> There shall be three kinds of execution; one against the property of the judgment debtor, the second for the delivery of the possession of real or personal property, or such delivery with damages for withholding the same, and the third, commanding the enforcement of or obedience to any special order of the court, and in all cases there shall be an order to collect the costs.

RCW 6.32.080 provides that in the course of supplemental proceedings:

> Where it appears from the examination or testimony taken in the special proceedings authorized by this chapter that the judgment debtor has in his possession or under his control money or other personal property belonging to him, or that one or more articles of personal property capable of manual delivery, his right to the possession whereof is not substantially disputed, are in the possession or under the control of another person, the judge by whom the order or warrant was granted, or to whom it is returnable, may in his discretion, and upon such notice given to such persons as he deems just, or without notice, make an order directing the judgment debtor, or other person, immediately to pay the money or deliver the articles of personal property to a sheriff designated in the order, unless a receiver has been appointed or a receivership has been extended to the special proceedings, and in that case to the receiver.

The critical determination is whether a SAR, a species of option purely personal to the judgment debtor, is "property . . . liable to execution" under RCW 6.04.060. We hold it is not.

---

[3]Mr. Skeen testified approximately 300 Boeing employees are entitled to incentive compensation. We presume the same number are entitled to SAR's.

At common law, a contract right or chose in action could not be the subject of a writ of execution. 30 Am. Jur. 2d *Executions* § 136 (1967). This included shares of stock, although the common law has been abrogated by RCW 62A.8–317. *See generally* 33 C.J.S. *Executions* § 32 (1942). Nevertheless, no statute provides a specific mechanism for attaching either a nontransferable stock option or SAR.

The Skeens draw an analogy between a SAR and the cash surrender value of a life insurance policy. It has been repeatedly held a court has no authority to compel an insured to exercise an option to surrender a policy for the benefit of the insured's creditors.

> What plaintiff wholly overlooks is that, *in the absence of the exercise by the insured of his option to take the cash–surrender value and dividends of a policy that has not matured,* there is no debt due and payable by the insurer to the insured, and *that the right of the insured to create such a debt by the exercise of the option* is not an asset available to creditors, but *is a right purely personal to the insured alone.* An option of this nature has been aptly described as an irrevocable offer made to the insured by the insurer, but in no way binding upon the insurer until acceptance be had. . . . As a general rule, a policy is not to be regarded as liable to seizure under any form of judicial process against the insured so long as the duty of the insurer to pay is subject to any contingency or to any condition precedent.

(Citations omitted.) *In re Elliott,* 74 Wn.2d 600, 622, 446 P.2d 347 (1968), quoting *Fox v. Swartz,* 235 Minn. 337, 51 N.W.2d 80, 86 (1952). *Accord, Pick v. Pick,* 54 Wn.2d 772, 345 P.2d 181 (1959); *Farmers' & Merchants' Bank v. National Life Ins. Co.,* 161 Ga. 793, 131 S.E. 902, 44 A.L.R. 1184 (1926).

We find the above analysis to be persuasive. Here, the SAR's are purely personal to Mr. Skeen (or his heirs or legatees) and in no way bind Boeing unless and until Mr. Skeen should choose to exercise them. *See generally* 18A Am. Jur. 2d *Corporations* § 1960 (1985). Even if he should choose to exercise his SAR's, Boeing may choose to limit

the amount exercised in any given fiscal quarter and to delineate the mode of payment.

Another reason advanced by the courts for precluding creditors from reaching life insurance is the legislative intent, as evinced by the exemption statutes, to favor beneficiaries, who are often dependent upon the insured for support. *In re Elliott, supra; Fox v. Swartz, supra.* While no Washington statute evinces a like intent to favor beneficiaries of a SAR, we may infer a congressional intent to favor beneficiaries from the restrictions on transfer imposed by the Internal Revenue Code. *See* 26 U.S.C. § 422. Those likely to receive SAR's by will or intestacy are just as likely to be dependents of the judgment debtor as would beneficiaries of his life insurance policy.

Respondents also analogize to an option to purchase real estate. *Provident Life & Trust Co. v. Mills,* 91 F. 435 (W.D. Wash. 1899) held that, while a transferable option may be sold under execution, the real estate subject to the option may not be sold under execution unless and until the judgment debtor (option holder) exercises his option. The court reasoned the debtor would have no legal or equitable title to the property prior to exercise of the option. *Accord, Sweezy v. Jones,* 65 Iowa 272, 21 N.W. 603 (1884); 30 Am. Jur. 2d *Executions* § 174 (1967). Likewise here appellants are not seeking execution upon the right to exercise an option, but rather upon the fruits of the option. Also, the SAR's are not transferable.

If SAR's are not property subject to execution, then neither RCW 6.04.020 nor 6.32.080 applies. RCW 6.04.020 defines execution; RCW 6.32.080 is a procedure in aid of execution. Assuming arguendo the unexercised SAR's would be subject to execution, there is nevertheless no statutory mechanism to compel Mr. Skeen to exercise his SAR's.[4]

We need not reach the Skeens' remaining arguments.

---

[4]Appellants contend the definition of execution, "commanding the enforcement of or obedience to any special order of the court," RCW 6.04.020, is broad

The judgment is affirmed.

## APPENDIX
### 1979 STOCK OPTION PLAN

The 1979 Stock Option Plan (the "Plan") for officers and other key employees of the Boeing Company and its subsidiaries, is adopted in order to provide added incentive for and to encourage stock ownership by such officers and key employees. From time to time options to purchase shares of the Company's common stock ($5.00 par value) may be granted to those officers and other key employees of the Company and its subsidiaries who may be designated by the Stock Option Committee hereafter described (the "Committee") subject to and consistent with the following terms and conditions.

1. All grants of options hereunder shall be made during the period of time from January 1, 1979 through December 31, 1983.
2. The option price per share shall not be less than 100% of the market price per share of the stock on the date the option is granted.
3. The purchase price of stock purchased pursuant to options granted thereunder shall be paid in full on date of purchase. However, at the sole discretion of the Committee stock appreciation rights may be granted in connection with all or any part of any option granted under this Plan, either concurrently with the grant of the option or at any time thereafter during the term of the option to any employee who may be deemed by the Committee to be a director or officer of the Company for purposes of Section 16 of the Securities Exchange Act of 1934. Stock appreciation rights shall entitle the holder thereof upon exercise of such rights and satisfaction of any conditions imposed by the Committee in the grant of such rights, to surrender the related option or any portion thereof and to receive without payment to the Company (except for applicable withholding taxes) an amount equal to the excess of the fair market value on the effective date of such

---

enough to encompass their requested relief. As aptly stated by respondents in their brief at pages 6–7:

> If such is the law, a new creditor's remedy, overlooked by generations of Washington lawyers (and courts) will have been approved. Hereafter the collection of a money judgment may be effectuated by the simple device of obtaining a post–judgment order directing the judgment debtor to deliver any money, real or personal property to his or her creditor until the judgment has been fully satisfied.

We agree with respondents that the garnishment statutes in this state would become mere surplusage if a judgment creditor could avoid all the statutory procedural limitations by a "Special Order for Execution," as sought by appellants herein.

exercise of the stock covered by such option or a portion thereof, over the option price of such stock.

Upon exercise of the stock appreciation right and the surrender of the related option or portion thereof, such option to the extent surrendered shall not thereafter be exercisable. Stock appreciation rights shall be exercisable at such time or times and to the extent that the options to which they are related shall be exercisable. However, no stock appreciation right may be exercised for a period of six months after the date such right is granted. The Committee shall have sole discretion to determine the employees to whom and the terms on which, stock appreciation rights will be granted and exercised, including whether the exercise of such rights will require approval of the Committee at the time of exercise, and whether payment will be made in cash or stock or any combination thereof.

4. No more than 750,000 shares in the aggregate shall be issued pursuant to options granted under the Plan, and no more than 5% of such number of shares may be issued to any one individual; provided, however, that in the event of any stock dividend, stock split or other change in the common stock of the Company declared or made after the effective date of the Plan, the number of shares which thereafter may be issued in the aggregate and to any one individual pursuant to options shall be proportionately adjusted and the number and the price per share of shares covered by options theretofore granted shall be proportionately adjusted. The total number of shares of stock which may be issued under this Plan shall be reduced by the total number of shares of stock for which stock appreciation rights are paid and the total number of shares of stock which may be optioned to any one individual shall be reduced by the total number of shares of stock for which stock appreciation rights have been paid to such individual. The shares to be issued upon the exercise of any option may be either authorized and unissued shares or previously issued shares held in the treasury, as determined by the Board of Directors of the Company. No fractional shares shall be issued upon the exercise of any option, nor shall any cash payment be made in lieu thereof.

5. The Stock Option Committee shall consist of those directors, who from time to time comprise the Incentive Compensation Committee of the Board of Directors. The members of the Committee shall not be eligible to receive any options under the Plan. A majority of the members of the Committee at the time in office shall constitute a quorum for the transaction of business, and any determination or action of the Committee may be made or taken at any meeting by a majority of all the members of the Committee or may be taken without a meeting by a resolution of written memorandum signed by all members of the Committee. The decision of the Committee with respect to any questions concerning the application, administration or

interpretation of the Plan shall be final, conclusive, and binding upon all parties.

6. The optionees, the number of shares of stock to be optioned in each case, and the terms upon which the options are granted shall be determined by the Committee, provided that each option shall contain a provision that will prevent exercise of the option unless the optionee remains in the employ of the Company or its subsidiaries at least one year after the granting of the option. Each option and related stock appreciation rights shall expire not later than ten years after the date of grant of such option. No options or stock appreciation rights granted hereunder shall be transferrable by the optionee other than by will or the applicable laws of descent and distribution. During the lifetime of the optionee such options or stock appreciation rights shall be exercisable only by the optionee or by the optionee's guardian or legal representative.

7. The Board of Directors may amend the Plan at any time, but may not, without the approval of the stockholders of the Company, make any amendment which would change the class of employees eligible to receive options or stock appreciation rights under the Plan, or increase the maximum number of shares which may be issued either in the aggregate or to any individual pursuant to options granted under the Plan. No amendment to the Plan shall, except with the consent of the optionee, adversely affect rights under an option theretofore granted.

8. The term "subsidiaries" for the purpose of the Plan means subsidiary corporations designated by the Company's Board of Directors to participate in the Plan.

1982 AMENDMENT
TO THE BOEING COMPANY
1979 STOCK OPTION PLAN

Section 1. Purposes. The purposes of this Amendment to The Boeing Company (the "Company") 1979 Stock Option Plan (the "Plan") are to revise and add terms so that selected options granted under the Plan will meet the requirements and receive the benefits of Internal Revenue Code Section 422A Incentive Stock Options ("ISOs"), and to provide for the exercise of any options granted under this Plan, whether nonqualified or ISO, by delivery to the Company of previously acquired stock of the Company.

Section 2. Inconsistent Provisions. To the extent that any of the following provisions are inconsistent with terms of the Plan existing prior to the date of this Amendment, the provisions contained in this Amendment shall control.

Section 3. New Terms. The Plan is hereby amended to add the following provisions:

3.1 <u>Term of Options.</u> The term of each option shall be as established by the Committee, but in no event shall the term of any option exceed ten (10) years.

3.2 <u>Who May Exercise ISOs.</u> During an optionee's lifetime, any ISOs granted under this Plan are personal to him or her and are exercisable solely by such optionee.

3.3 <u>Termination of Employment.</u> If an optionee ceases to be employed by the Company or any related corporation for any reason, the *optionee's option shall terminate at the end of the twelve (12) month period following such cessation of employment* (unless by its terms it sooner terminates and expires) as to all shares for which it has not theretofore been exercised, unless the Committee by resolution adopted prior to or within thirty (30) days after the effective date of such cessation of employment waives the conditions of this subsection 3.3. For purposes of this subsection 3.3, a transfer of employment between or among the Company and/or any related corporation shall not be deemed to constitute a cessation of employment with the Company or any related corporation.

3.4 <u>Exercise of ISOs in Sequence.</u> No ISO granted under this Plan shall be exercisable by an optionee at a time when the optionee holds an earlier granted ISO of the Company or any related corporation. An ISO granted under this Plan or any other such plan adopted by the Company or any related corporation shall be deemed to be outstanding from the time it is granted until it is exercised in full, expires by reason of lapse of time or terminates pursuant to the provisions of this Plan.

Section 4. <u>Annual Limit.</u>

4.1 <u>Limitation on Value.</u> As to all ISOs granted under the terms of this Plan, the aggregate fair market value (determined at the time the ISO is granted) of the stock for which any employee may be granted ISOs in any calendar year (under this Plan or any other incentive stock option (as defined in Code Section 422A) plan of the Company or a related corporation) shall not exceed $100,000 plus any unused limit carryover to such year.

4.2 <u>Carryover of Unused Limit.</u> If $100,000 exceeds the aggregate fair market value (determined at the time the ISO is granted) of the stock for which an employee was granted ISOs in any calendar year (under this Plan and all other incentive stock option plans of the Company or related corporations) one–half of such excess shall be an unused limit carryover to each of the three (3) succeeding years. ISOs granted during any calendar year shall be treated as first using up the $100,000 limitation of subsection 4.1 and then shall be treated as using up unused limit carryovers to such year in the order of the calendar years in which the carryover arose.

Section 5. <u>Stock Appreciation Rights Granted in Tandem With ISOs.</u> With respect to Stock Appreciation Rights granted to a director or officer

of the Company in connection with the grant of an ISO, the following requirements, in addition to those contained in the Plan before this Amendment, must be met:

(a) The Stock Appreciation Rights must be granted concurrently with the grant of the ISO.

(b) The Stock Appreciation Rights are transferable only when and under the same conditions that the underlying ISO is transferable.

(c) *The Stock Appreciation Rights may be exercised only at such times as the underlying ISO is eligible to be exercised.*

(d) The Stock Appreciation Rights may be exercised only at a time when the market price of the stock subject to the underlying ISO exceeds the exercise price of the ISO.

Section 6. Exercise of Option With Stock. Any option granted under this Plan may be exercised by the optionee by delivery of shares of the capital stock of the Company having a fair market value equal to the exercise price. If the fair market value of the stock delivered is less than the exercise price, such short–fall must be made up in cash.

Section 7. Related Corporation Defined. For purposes of this Plan, the term "related corporation" shall mean any corporation (other than the Company) in an unbroken chain of corporations ending with the Company, if stock possessing fifty percent (50%) or more of the total combined voting power of all classes of stock of each of the corporations other than the Company is owned by one of the other corporations in such chain.

Section 8. Ratification. In all other respects, the Plan is hereby ratified and confirmed. (Italics ours.)

ANDERSEN, J. Pro Tem., concurs.

WINSOR, J.* (dissenting)—I dissent and would reverse the trial court. SAR's are a property right subject to execution. The superior court does have the statutory right to require the judgment debtor to exercise his right to a SAR for the benefit of a creditor.

Under RCW 6.04.060 "[a]ll property, real and personal . . . not exempted by law, shall be liable to execution." This statute is all inclusive. *Johnson v. Dahlquist,* 130 Wash. 29, 31, 225 P. 817 (1924). The Supreme Court recognized this in *Johnson v. Dahlquist, supra* at 31–32, when it held that an unliquidated claim of indebtedness can be subject to execution even though the debt is owed by the levying party.

In *Woody's Olympia Lumber, Inc. v. Roney,* 9 Wn. App. 626, 633, 513 P.2d 849 (1973) the court held an unliquidated tort claim can be subject to execution. In doing so, it clearly recognized that "there has been a steady trend of the law to make all species of property freely alienable and subject to the demands of the owner's creditors." *Woody's Olympia Lumber, Inc. v. Roney, supra* at 633. The court went on to state at page 633:

> Our statute is sufficiently broad to include unliquidated tort claims even if of dubious value, and we see no reason to limit by judicial construction or prohibit the judicial process of attachment or execution by excluding such claims.

As part of a compensation package, the respondent received stock appreciation rights. SAR's are essentially wages and as such are a property right which should not be exempt from the reach of creditors.

The mechanism to require the respondent to exercise his SAR's for the benefit of appellant exists under RCW 6.04-.020. The statute provides three kinds of execution: the first against the judgment debtor's property, the second for delivery of possession of real or personal property, and finally by "commanding the enforcement of or obedience to any special order of the court". RCW 6.04.020. By entering a special order, the trial court can require respondent to exercise his SAR's for the benefit of appellant. This does not stretch the language of RCW 6.04.020, and in fact allows a creditor a mechanism to reach the property of a debtor.

Respondents argue an analogy to exempt life insurance proceeds. Although SAR's resemble in some ways the cash surrender value of life insurance proceeds, those proceeds are protected from creditors, not for the benefit of the insured, but for his or her widow and children. This is a clear exception to the statute allowing a wide variety of property to be executed upon. The cash surrender exception is "rather in the nature of a preference which is given to the beneficiary over the creditors of the debtor insured".

*Fox v. Swartz,* 235 Minn. 337, 347–48, 51 N.W.2d 80 (1952), *quoted in In re Elliott,* 74 Wn.2d 600, 621, 446 P.2d 347, 360 (1968).

This "preference" established for life insurance proceeds should not be extended to SAR's, an incentive which is essentially an alternative form of wages. A simple reading of RCW 6.04.020 allows a trial judge to enter a "special order" and can require a recipient of an SAR to execute it for the benefit of a creditor.

Review denied by Supreme Court June 2, 1987.