ITASCA BANK AND TRUST COMPANY, Plaintiff-Appellant, v. THORLEIF LARSEN AND SON, INC., Defendant (Mark Larsen, Defendant-Appellee).

Second District    No. 2—04—0013

Opinion filed September 16, 2004.

David J. Freeman, of Moss & Bloomberg, Ltd., of Bolingbrook, for appellant.

Michael J. Morrisroe and Jesse K. Myslinski, both of Michael J. Morrisroe, Ltd., of Bloomingdale, for appellee.

JUSTICE CALLUM delivered the opinion of the court:

Plaintiff, Itasca Bank and Trust Company, appeals from an order denying its motion for turnover under section 2—1402 of the Code of

Civil Procedure (Code) (735 ILCS 5/2—1402 (West 2002)) and from an order denying its motion to reconsider the previous denial. The motion for turnover asked the court to order defendant Mark Larsen (Mark) to resign his membership in the Medinah Country Club (Club) and turn over to plaintiff money that the Club would refund to Mark upon its accepting a member to replace him. We hold that section 2—1402 does not give the trial court authority to order such a resignation. Therefore, we affirm the judgment of the trial court.

Plaintiff sued Thorleif Larsen and Son, Inc., for failure to make payments on a promissory note and sued Mark for failure to make payments as guarantor of the note. The court entered judgment against both for $917,565.67. In proceedings on a citation to discover assets, plaintiff learned that Mark had, among other possible assets, a membership in the Club. Plaintiff moved the court to order Mark to turn over the assets, but the court denied the motion as to Mark's membership in the Club, presumably because the membership was not transferable by turnover. Plaintiff filed a second motion for turnover, which asked the court to order Mark to sell his interest in the Club and turn over the resulting money to plaintiff. The court denied this motion as well.

Plaintiff then filed a third motion, asking the court to order Mark to resign his membership in the Club. At the hearing on the motion, Mark admitted that resignation of the membership would yield about $17,000, less any amount he owed the Club. The court denied the motion, finding that "it would be expanding [section 2—1402] too far to order that this judgment debtor be compelled to resign his interest in the Medinah Country Club" and that "no law *** would support a Court requiring that a judgment debtor take such action."

Plaintiff moved for reconsideration, contending that the court had erred in its interpretation of section 2—1402. This motion was essentially identical to the third motion for turnover, except that it cited *Warburton v. Virginia Beach Federal Savings & Loan Ass'n*, 899 P.2d 779, 783 (Utah App. 1995), for the proposition that "a 'membership' is at most a contractual right and is not an interest in real estate," a proposition with no clear relation to its overall argument. At the hearing on the motion, plaintiff stated that the issue was whether the Club membership was "an asset, or *** some sort of intangible that cannot be delivered up by this Court." It argued that the membership was a property right and that the court should be able to order the debtor to take the actions necessary to give the creditor the value of the asset. The court denied the motion "as to whether the membership interest at Medinah Country Club is exempt under 735 ILCS 5/2—1402" and found no just reason to delay enforcement or appeal of the order.

Plaintiff now appeals, contending that the trial court erred in concluding that section 2—1402 did not give it the power to order Mark to do what was necessary to enable plaintiff to reach the Club membership. Mark responds that the court's interpretation was proper. He also contends that plaintiff's motion to reconsider "failed to cite to any error made by the trial court in denying Plaintiff's motion for turnover" and "failed to present any new evidence or case law that would justify *** a reversal of the trial court's ruling" and therefore "failed to satisfy the threshold for the court's consideration of a Motion to Reconsider."

■ Preliminarily, we address Mark's contention that plaintiff's motion to reconsider was improper. The "purpose of a motion to reconsider is *to bring to the court's attention* newly discovered evidence, changes in the law, or *errors in the court's previous application of existing law.*" (Emphasis added.) *Farmers Automobile Insurance Ass'n v. Universal Underwriters Insurance Co.*, 348 Ill. App. 3d 418, 422 (2004). Here, the court based its denial of the motion for turnover entirely on its legal determination that section 2—1402 does not allow a court to grant the relief plaintiff requested, so the motion to reconsider was surely intended to convince the court that its legal conclusion was in error. This is a proper purpose for a motion to reconsider. Mark implies that a court cannot grant a motion to reconsider, even if the party has persuaded it that it erred in its interpretation of the law, if the motion to reconsider adds no new facts or case law to that presented in the original motion. We find no authority for this proposition, and we reject it.

We now turn to the primary issue in this appeal: whether section 2—1402 gives a court authority to order a judgment debtor to resign a country club membership. This is a question of statutory interpretation, and accordingly, our review is *de novo.* See *Eads v. Heritage Enterprises, Inc.*, 204 Ill. 2d 92, 96 (2003). Further, our review of a trial court's application of the law to the facts presented, whether in an original motion or a motion to reconsider, is always *de novo. O'Shield v. Lakeside Bank*, 335 Ill. App. 3d 834, 838 (2002).

■ Plaintiff contends that, because Mark's rights in the membership are not explicitly statutorily exempt from the satisfaction of a judgment, section 2—1402 must provide a mechanism for it to reach them. While the notion of a perfect interrelationship between the exemption provisions and section 2—1402 is attractive, we find nothing in section 2—1402 that requires it. Section 2—1402 specifies the actions a court may take "[w]hen assets or income of the judgment debtor not exempt from the satisfaction of a judgment, a deduction order or garnishment are discovered." 735 ILCS 5/2—1402(c) (West

2002). These include "[c]ompel[ling] the judgment debtor to deliver up *** [certain] money, choses in action, property or effects in his or her possession or control *** [and] capable of delivery" (735 ILCS 5/2—1402(c)(1) (West 2002)) and "[c]ompel[ling] any person cited to execute an assignment of any chose in action or a conveyance of title to real or personal property" (735 ILCS 5/2—1402(c)(5) (West 2002)). Plaintiff does not point to any provision in the section as explicitly authorizing an order requiring Mark to resign his membership, nor do we find one. This may mean that the membership, despite not being in the category of assets explicitly exempted from the satisfaction of judgments, is nevertheless beyond plaintiff's reach; section 2—1402 does not bar such a result.

■ Plaintiff contends that, under the rule that section 2—1402 should be construed liberally to give courts broad powers to compel the application of discovered assets to the satisfaction of judgments (see *Kennedy v. Four Boys Labor Service, Inc.*, 279 Ill. App. 3d 361, 367 (1996)), we must find that any power needed to reach a nonexempt asset is implicit in the section. Such an interpretation comports with neither the rules of statutory construction nor the historical interpretation of the provisions. Rules regarding liberal or strict construction are a means to decide in whose favor a court should resolve uncertainties, not a means to restrict or expand a statute beyond what it clearly says. See *Brady v. Board of Education of Palatine Community Consolidated School District 15*, 284 Ill. App. 3d 803, 807 (1996). A court overreaches if it goes beyond construing the statute as it is written and, under the guise of construction, reads new provisions into it to remedy omissions the court may perceive. See *DeWig v. Landshire, Inc.*, 281 Ill. App. 3d 138, 143 (1996). The few interpretations of section 2—1402 relevant to this issue have been consistent with these principles, interpreting the powers listed in section 2—1402 expansively, but without allowing trial courts to take on powers not listed.[1] Thus, this court in *Kennedy* approved a turnover order based on a broad interpretation of which assets in the hands of

---

[1]*Gonzalez v. Profile Sanding Equipment, Inc.*, 333 Ill. App. 3d 680, 694-95 (2002), arguably does not fit this pattern, since it requires a narrow reading of the phrase "chose in action." It does, however, support our conclusion that one need not read section 2—1402 to allow a creditor to use it to reach every possible asset. In *Gonzalez*, the court held that one should not extend the list of assets reachable under the section from "choses in action" to "potential choses in action." A creditor may reach a chose in action, such as a malpractice claim that the debtor has asserted, but not a potential chose in action, such as a possible malpractice claim that it has not asserted. "Obviously, if the legislature opted to include 'potential chose' in the list of possible assets, it

a third party could be construed to be the debtor's assets, whereas this court in *In re Marriage of Pick*, 167 Ill. App. 3d 294 (1988), and a Fourth District panel in *Business Service Bureau, Inc. v. Martin*, 306 Ill. App. 3d 907, 910 (1999), disapproved of trial courts' uses of powers not specified by section 2—1402.

In *Kennedy*, a debtor corporation entered into a series of transactions that, effectively, sold the assets of the corporation to a corporation owned by relatives of a corporate officer and placed the proceeds of the sale in the hands of the officer. *Kennedy*, 279 Ill. App. 3d at 364-65. The creditor sought to recover the proceeds of the sale from the officer, who contended that section 2—1402 was inapplicable because she was not in possession of the debtor's assets as such. *Kennedy*, 279 Ill. App. 3d at 367. This court held that "where a third party has transferred the assets of the corporate debtor for consideration, with full knowledge of the existence of an outstanding claim against the corporation, then the judgment creditor may properly treat the proceeds from the sale of the assets as property of the corporate debtor, which is recoverable pursuant to section 2—1402." *Kennedy*, 279 Ill. App. 3d at 367. Thus, the court gave the term "assets" an interpretation broad enough to facilitate the creditor's recovery.

In contrast, in *Pick* this court found that, because section 2—1402 does not authorize the sale of a debtor's assets by persons other than the sheriff, it does not provide for the equitable remedy of sequestration. Under common law, a judgment creditor had no means at law to reach the intangible property of a debtor. See *W.G. Press & Co. v. Fahy*, 313 Ill. 262, 266-67 (1924). Such property had to be reached through actions of equitable origin, such as a creditor's bill. See *King v. Goodwin*, 130 Ill. 102, 108 (1889). One possible action was sequestration, in which the court appointed a sequestrator, whose duties typically were "to seize and manage or sell the assets held by a noncomplying party in order to enforce a judgment." *Pick*, 167 Ill. App. 3d at 299. Sequestration was available under the Civil Practice Act of 1933, which the Code, including section 2—1402, replaced in 1982. See *Pick*, 167 Ill. App. 3d at 299. This court noted that the plain language of section 2—1402 provided that "property ordered to be delivered up [by the judgment debtor] shall *** be delivered to the sheriff to be collected by the sheriff or sold at public sale." Ill. Rev. Stat. 1985, ch. 110, par. 2—1402(c). We read this as making the sheriff the only person authorized to conduct a sale of the debtor's property. *Pick*, 167 Ill. App. 3d at 302. As a result, sequestration, because it allowed the

would have done so. It did not, and we cannot read that condition into the statute." *Gonzalez*, 333 Ill. App. 3d at 695.

sequestrator, not the sheriff, to sell the debtor's property, ceased to be within the authority of the court unless provided for by another applicable statute. *Pick*, 167 Ill. App. 3d at 302.

A Fourth District panel reached a related conclusion in *Business Service Bureau*, holding that the list of the actions a court can order in section 2—1402 is exclusive. A trial court had ordered an unemployed judgment debtor to search for a job and keep a record of his efforts. *Business Service Bureau*, 306 Ill. App. 3d at 907. Concluding that under the "clear and unambiguous language of section 2—1402(a), no provision for creating or ordering the creation of assets exists," the reviewing court held the order to be unauthorized. *Business Service Bureau*, 306 Ill. App. 3d at 910. Although it agreed with the creditor that it should construe liberally the language of the provisions creating the supplementary proceedings, it disagreed that the failure to allow such orders would frustrate section 2—1402's scheme for assisting creditors in satisfying their judgments or that such orders were essential to the statute's purpose. *Business Service Bureau*, 306 Ill. App. 3d at 910.

Our conclusion here is supported by the resolution of the most similar case we have located in any jurisdiction. In *Safeco Insurance Co. of America v. Skeen*, 47 Wash. App. 196, 198, 734 P.2d 41, 42 (1987), the debtor, a Boeing executive, had received stock appreciation rights—nontransferable rights to have Boeing pay him the difference between the value of Boeing stock on the day of issue and the value on the day of exercise, subject to certain rules modifiable by Boeing. The creditor sought to have the court order the debtor to exercise the rights and turn over the funds received to the sheriff. *Safeco*, 47 Wash. App. at 199, 734 P.2d at 42. The court's principal holding was that the stock appreciation right did not fall within the definition of "property liable to execution" under Washington law. *Safeco*, 47 Wash. App. at 200, 734 P.2d at 43. However, it also held that Washington execution law, despite providing for " 'commanding the enforcement of or obedience to any special order of the court' " (*Safeco*, 47 Wash. App. at 200, 734 P.2d at 43, quoting Wash. Rev. Code § 6.04.020 (___)), did not give the trial court authority "to direct the management of a judgment debtor's assets or contract rights for the benefit of a judgment creditor" (*Safeco*, 47 Wash. App. at 197, 734 P.2d at 42). We reach the same conclusion under section 2—1402.

For the reasons given, we affirm the order the circuit court of Du Page County.

Affirmed.

BOWMAN and BYRNE, JJ., concur.