No. 3-05-0128
_____

_____

corrected opinion originally filed August 10, 2006.
APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2006
_____

_____

DEPARTMENT OF TRANSPORTATION )     Appeal from the Circuit Court
STATE OF ILLINOIS )     for the 9th Judicial Circuit,
)     McDonough County, Illinois
  Plaintiff-Counter-Defendant-Appellee )
)
-vs- )     03-ED-10
)
LOWDERMAN, LLC and UNKNOWN )
OWNERS, )     Honorable John R. Clerkin,
)     Judge, Presiding.
  Defendant -Appellant. )
_____

_____

     JUSTICE McDADE delivered the opinion of the court:
_____

_____

     This appeal originates from a complaint for condemnation brought by plaintiff-counter-defendant Illinois Department of Transportation ("IDOT") which sought to condemn a portion of property belonging to defendant-counter-plaintiff Lowderman, LLC ("Lowderman"). Specifically, Lowderman appeals from an order of the circuit court of McDonough County denying Lowderman's motion that the jury be allowed to determine damages resulting from IDOT's extinguishment of access rights to U.S. Route 136. The trial court ruled that because reasonable access is guaranteed to state highways by 605 ILCS 5/4-210, the Lowderman remainder cannot be landlocked. For the reasons that follow, we affirm the judgment of the

circuit court on different grounds.

Two issues are before this court on appeal: 1) whether the trial court erred in finding that the Lowderman remainder is insulated from landlocking because reasonable access is guaranteed to state highways by 605 ILCS 5/4-210; and 2) have all of Lowderman's access rights to U.S. Route 136 been extinguished as a result of IDOT's condemnation, thereby entitling him to have the jury consider damages for the taking of such rights. As to the first issue, reading the limiting language of section 4-210 in conjunction with the permissive language of section 8-102, it would be improper to read into section 4-210 a prohibition on a governmental entity's power to landlock property abutting a freeway. Therefore, the trial court did err in finding that the State cannot landlock the Lowderman remainder. As to the second issue, although Lowderman claims that the taking results in the loss of all his access rights to U.S. Route 136, the case-law he cites in support of this assertion is simply inapplicable. Lowderman's cited cases deal with a landowner deeding his property to the State, whereas here, it is the State condemning the property and then substituting a frontage road. Furthermore, 605 ILCS 5/4-210 controls in that it guarantees Lowderman a reasonable right of access by way of the frontage road. This right is protected until the State limits such access pursuant to law at which point Lowderman would be entitled to additional just compensation.

FACTS

IDOT filed a complaint for condemnation in the McDonough Circuit Court. The complaint sought to condemn a portion of certain property belonging to Lowderman located adjacent to U.S. Route 136. The complaint stated that it was necessary for IDOT to acquire all access rights to U.S. Route 136 of the remaining property owned by Lowderman. The complaint also stated that "access to the remaining land of the grantor shall be provided by way of a

frontage road along the grantor's southerly property line." A quick-take hearing was held and Lowderman filed a counterclaim for damages to the Lowderman remainder.

Lowderman also filed a motion requesting a preliminary ruling on whether the jury could consider Lowderman's claims that: 1) the taking of direct access of the Lowderman remainder to U.S. Route 136 and the substitution of a frontage road resulted in a material impairment of access and damages to the Lowderman remainder; and 2) the taking of the access rights of the Lowderman remainder to U.S. Route 136 resulted in damages to that remainder.

After hearing argument, the trial court agreed with Lowderman's claim that the jury can determine damages resulting from the taking of direct access of the Lowderman remainder to U.S. Route 136 and the substitution of the frontage road. However, the court denied Lowderman's claim that the jury can determine damages resulting from IDOT's extinguishment of access rights to U.S. Route 136. The trial court ruled that because reasonable access is guaranteed to state highways by 605 ILCS 5/4-210, the Lowderman remainder cannot be landlocked and therefore, Lowderman still possessed certain access rights. Consequently, the court found that the jury could not consider damages resulting from the extinguishment of all access rights of the remainder. Lowderman filed a motion to reconsider which was subsequently denied. The trial court then certified Lowderman's right to appeal pursuant to Illinois Supreme Court Rule 304(a).

STANDARD OF REVIEW

It is a question of law for the court to determine in the first instance whether there has been an actionable taking or material impairment of access which entitles the property owner to compensation. *The Department of Public Works & Buildings v. Wilson & Co.*, 62 Ill. 2d 131,

3

141, 340 N.E.2d 12, 17 (1975).  Questions of law are reviewed *de novo*.  *Arthur v. Catour*, 216 Ill. 2d 72, 78, 833 N.E.2d 847, 851 (2005).

## ANALYSIS

The first issue we must examine on appeal is whether the trial court erred in finding that because reasonable access is guaranteed to state highways by 605 ILCS 5/4-210, the Lowderman remainder cannot be landlocked.  Two statutes are relevant to this analysis: 1) 605 ILCS 5/4-210; and 2) 605 ILCS 5/8-102.

Section 4-210 states:

> "Except where the right of access has been limited by or pursuant to law every owner or occupant of property abutting upon any State highway shall have reasonable means of ingress from and egress to the State highway consistent with the use being made of such property and not inconsistent with public safety or with the proper construction and maintenance of the State highway for purposes of travel, drainage and other appropriate public use." 605 ILCS 5/4-210 (West 2004).

Section 8-102 states:

> "The Department, the county board, or the corporate authorities of any municipality, as the case may be, shall also have authority to extinguish by purchase or condemnation any existing rights or easements of access, crossing, light, air or view to, from or over the freeway vested in abutting land, in the same manner as the

4

Department, county board, or corporate authorities of any municipality now is or hereafter may be authorized by law to acquire private property and property rights in connection with highways under their respective jurisdiction and control." 605 ILCS 5/8-102 (West 2004).

A court's primary objective in construing a statutory provision is to determine and give effect to the legislature's intent. *Kraft Inc. v. Edgar*, 138 Ill. 2d 178, 189, 561 N.E.2d 656, 661 (1990). In looking at the intent of the legislature in drafting section 4-210 and section 8-102, it is important to note the limiting language found in section 4-210, ("except where the right of access has been limited by or pursuant to law..."). 605 ILCS 5/4-210 (West 2004); and the permissive language found in section 8-102, ("...shall also have authority to extinguish by purchase or condemnation any existing rights or easements of access..."). 605 ILCS 5/8-102 (West 2004).

The trial court in interpreting these two statutes found that the Lowderman remainder cannot be landlocked because reasonable access is guaranteed to state highways under section 4-210. Reading the limiting language of section 4-210 in conjunction with the permissive language of section 8-102, it is clear the legislature intended to grant the State authority to extinguish an abutting landowner's access rights to a freeway. This seems to be the case even though the abutting landowner is landlocked as a result of the State's action. We should not read into section 4-210 a prohibition on a governmental entity's power to landlock property abutting a freeway. A court exceeds its authority if it goes beyond construing the statute as it is written and, under the guise of construction, reads new provisions into it to remedy omissions the court

5

may perceive.  *Itasca Bank and Trust Co., v. Thorleif Larsen and Son, Inc*., 352 Ill. App. 3d 262, 266, 815 N.E.2d 1259, 1262 (2004).  Consequently, we hold the trial court erred in finding that section 4-210 restricts Lowderman's property from being landlocked as a matter of law.

Having so determined, we now turn our attention to the question of whether all of Lowderman's access rights to U.S. Route 136 have, in fact, been extinguished as a result of IDOT's condemnation proceedings.  Lowderman argues that IDOT's condemnation in effect extinguished all of the remainder's access rights to U.S. Route 136.  For this reason, Lowderman contends that the trial court erred in denying its claim that the jury be allowed to determine damages resulting from the extinguishment of such rights.  It appears the resolution of this issue hinges on the fact that section 4-210 still affords Lowderman a reasonable right of access to U.S. Route 136 by way of the frontage road located on its remainder.  In response to this fact, Lowderman contends that the current use of the frontage road to gain ingress and egress to U.S. Route 136 merely constitutes a license revocable at will by the State.  Specifically, Lowderman relies on two cases in claiming that the State has extinguished all of the Lowderman remainder's access rights to U.S. Route 136, including those by way of the frontage road.  The two cases Lowderman relies on are: 1) *The Department of Transportation v. Western National Bank of Cicero*, 69 Ill. 2d 576, 581, 373 N.E.2d 14, 17 (1978); and 2) *The Department of Transportation v. Cavagnaro*, 62 Ill. App. 3d 881, 885, 379 N.E.2d 863, 865 (1978).  We find both cases distinguishable from the case at bar.

In *Cavagnaro*, defendants owned property abutting a highway.  In 1957, the State acquired portions of defendants' properties by deeds of dedication.  These deeds provided that defendants' rights of access were extinguished.  Subsequently, the State provided a frontage road

6

on the land which defendants used to go to and from their abutting property. Then in 1972, the State filed a condemnation petition that called for the elimination of a portion of the frontage road. At trial, defendants' valuation witness was permitted to testify as to the damage to the remainders resulting from the impaired access. On appeal, the court found the trial court erred in allowing such testimony because the defendants' use of the frontage road was merely in the nature of a license. *Cavagnaro*, 62 Ill.App. 3d at 884, 379 N.E.2d at 864. The court held that since the State had paid the defendants to extinguish their rights to ingress and egress, the "subsequent creation of the frontage road neither restored defendants' former access rights, nor created new ones." *Cavagnaro*, 62 Ill.App. 3d at 884, 379 N.E.2d at 864.

In *Western National Bank of Cicero*, defendants owned land with direct access to two roads. As in *Cavagnaro*, the State acquired portions of defendants' properties by deeds of dedication in 1958. The State also constructed a frontage road allowing defendants access to the two roads. Then, in 1972, the State found it necessary to widen and improve one of the roads. A condemnation petition was filed which included the elimination of the frontage road, leaving the defendants with ingress and egress but only by a circuitous route. The defendants filed a cross-petition alleging that the value of the remainder of the property would be substantially reduced by the expansion and prayed that the jury award compensation accordingly. The jury awarded the defendants $80,000 for the land taken and $127,000 for damages to the remainder, apparently based upon the loss of access. On appeal, the Illinois Supreme Court held that the defendants had relinquished their access rights pursuant to the terms of the 1958 deed of dedication. *Western National Bank of Cicero*, 69 Ill. 2d at 580-581, 373 N.E.2d at 16. Consequently, the court found that defendants had no rights remaining to be extinguished and no rights for which

7

the State must compensate them. *Western National Bank of Cicero*, 69 Ill. 2d at 580-581. 373 N.E.2d at 16.

Lowderman interprets these cases to support the conclusion that IDOT's condemnation proceeding has extinguished all of its access rights to U.S. Route 136. Lowderman asserts that it only has one opportunity to obtain compensation for the loss of access rights and therefore, the trial court erred in denying its claim that the jury be allowed to determine damages resulting from the extinguishment of such rights. Lowderman's conclusion is misguided. The cases Lowderman relies on in support of its argument are distinguishable from the case at bar. Both *Cavagnaro* and *Western National Bank of Cicero* dealt with landowners deeding all of their access rights to the State. There, the landowners affirmatively gave up all their access rights. No such action has taken place in this case. Here, we merely have the State taking direct access to U.S. Route 136 and substituting indirect access *via* a frontage road for the landowner's use. Lowderman has not deeded away all of its access rights to the State as the landowners in *Cavagnaro* and *Western National Bank of Cicero* did. Therefore, *Cavagnaro* and *Western National Bank of Cicero* are simply not dispositive as to the question of whether Lowderman has retained any right of access to U.S. Route 136.

Upon review, we believe that Lowderman still retains a reasonable right of indirect access to U.S. Route 136 through use of the frontage road. Again, section 4-210 states, "except where the right of access has been limited by or pursuant to law every owner or occupant of property abutting upon any State highway shall have reasonable means of ingress from and egress to the State highway...". 605 ILCS 5/4-210 (West 2004). Therefore, Lowderman has retained a right of access that is protected under section 4-210 until it is further limited pursuant

8

to some law such as section 8-102. As a result, Lowderman's contention that it is entitled to additional compensation because its remainder has effectively been landlocked is premature and thus not before this court. "The mere fear of contingent injury, which may never occur, and the happening of which is speculative and uncertain, is not a showing of damage." *Waukegan Park Dist. v. First National Bank*, 22 Ill. 2d 238, 246, 174 N.E.2d 824, 829 (1961). Furthermore, Lowderman's assertion that it can be landlocked at anytime without just compensation is also incorrect. As discussed above, Lowderman retains a right of access under section 4-210 until it is limited pursuant to law. Upon being limited or extinguished pursuant to law, the State will have to compensate Lowderman for that taking. The rights of access, ingress and egress are valuable property rights that cannot be taken away or materially impaired without just compensation. *The Department of Public Works and Buildings v. Wolf*, 414 Ill. 386, 389, 111 N.E.2d 322, 324 (1953).

Our interpretation is supported by the Illinois Supreme Court's holding in *The Department of Public Works and Buildings v. Wilson and Company, Inc.*, 62 Ill. 2d 131, 145, 340 N.E.2d 12, 18 (1975). Unlike *Cavagnaro* and *Western National Bank of Cicero*, which involved the deeding of all access rights, *Wilson* concerned the taking of access rights by way of eminent domain. In *Wilson*, the State sought to acquire a .55-acre tract of land, which was the owner's entire frontage and only access to a highway. The sole issue before the court was whether deprivation of all direct access to the highway was compensable where there was a substitute access furnished by means of a frontage road. In holding a property owner has a valuable property right of access to streets adjoining his property that cannot be materially impaired without just compensation, the court found that the partial taking which occurred did

9

result in a material impairment of access. *Wilson*, 62 Ill. 2d at 139, 340 N.E.2d at 16. The court stated: "there is some divergence among the States as to whether the issue of materiality of impairment of access is a question of law or fact. In our opinion, the better view is that it is a question of law for the court to determine in the first instance whether there has been an actionable taking or material impairment of access which entitles the property owner to compensation. It is then for the jury to determine the extent of damages which have resulted." *Wilson*, 62 Ill. 2d at 141, 340 N.E.2d at 17.

The *Wilson* court held that it is the trial court's duty to determine whether there has been a material impairment of access. Upon determining there has, it is then for the jury to determine the damages as a result of such impairment. In setting forth its procedure, the court was clear in using the language "impairment of access," as opposed to the language "elimination or extinguishment of all access rights." Implicit in such verbiage is the conclusion that although the landowner's access rights have been impaired by the State's taking of his direct access to the abutting highway, his rights have not been completely eliminated. He still retains the right of indirect access through the use of the frontage road.

Although the dissent views the usage of the frontage road as merely a license and not a right, it cites no condemnation authority to support such a viewpoint. Nowhere does the court in *Wilson* even use the word "license." Instead, the court states that the "frontage road bears not on the question of compensability but is relevant in mitigation of damages resulting from the elimination of the existing *direct access*." (Emphasis added) *Wilson*, 62 Ill. 2d at 141, 340 N.E.2d at 17. The *Wilson* court found the proper calculation of compensation for the impaired access was the difference between the value to the retail business of land with direct highway

10

access *versus* the same land with access only by way of the less convenient frontage road. *Wilson*, 62 Ill. 2d at 141, 340 N.E.2d at 17.

Here, the trial court followed the procedure announced by the court in *Wilson*. The court correctly determined that Lowderman's access rights were materially impaired as a result of the State's taking of his direct access to the highway. The court then found that the jury can determine just compensation based on the value of the land itself and any reduction in value of the remainder resulting from the taking of direct access and the substitution of the frontage road. Because Lowderman retains an indirect right of access through the use of the frontage road, the trial court also ruled correctly in denying Lowderman's claim that the jury can determine damages resulting from IDOT's extinguishment of all access rights of the Lowderman remainder to U.S. Route 136.

## CONCLUSION

Accordingly, we affirm the judgment of the circuit court of McDonough County, although on slightly different grounds. However, in the interest of clarity, we suggest that IDOT include the following language in the transfer instrument: "This eminent domain proceeding only constitutes the taking of Lowderman's direct access rights to U.S. Route 136, and does not extinguish its remaining indirect access rights to U.S. Route 136 by way of the frontage road, which may be subject to future proceedings by the State." Such language in the transfer instrument reflects IDOT's assertion in this appeal that it has only taken Lowderman's direct access rights without elimination of the general access rights that still inhere in the remainder.

Affirmed.

BARRY, J., specially concurs.

11

HOLDRIDGE, J., dissents.